Irene Ethel VINYARD, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17556.

United States Court of Appeals Eighth Circuit.

Aug. 12, 1964.

Certiorari Denied Dec. 7, 1964.

See 85 S.Ct. 327.

George R. Gerhard, St. Louis, Mo., made argument and filed brief for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., made argument for appellee and filed brief with Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo.

Before VOGEL, MATTHES and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

Appellant was indicted for and convicted by a jury of violating the provisions of 18 U.S.C.A. § 201(b) (3),[1] in that she offered, and gave, a bribe to two agents of the government after they had arrested her for alleged violation of the Internal Revenue laws. Appellant received a sentence of six months and a $500 fine. Because of the nature of this appeal, the facts are set out here in some detail.

On August 10, 1963, appellant was arrested by agents of the Treasury Department for refilling of liquor bottles in violation of 26 U.S.C.A. § 5301(c).[2] The facts relating to that arrest which are pertinent to this opinion are as follows: In the very early morning hours of August 10, 1963, Gene L. Overturf, a criminal investigator with the Federal Alcohol and Tobacco Tax Division, and Jack A. Wallace, a Special Agent with the Intelligence Division of the Internal Revenue Service, entered the 61 Lounge, an establishment owned by appellant in St. Louis, Missouri. While there, upon

---

1. 18 U.S.C.A. § 201(b) (3) provides:

   "(b) Whoever, directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent—

   \*   \*   \*   \*   \*

   "(3) to induce such public official or such person who has been selected to be a public official to do or omit to do any act in violation of his lawful duty \* \* \*

   \*   \*   \*   \*   \*

   "Shall be fined not more than $20,000 or three times the monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States."

2. 26 U.S.C.A. § 5301(c) provides:

   "*Refilling of liquor bottles.*—No person who sells, or offers for sale, distilled spirits, or agent or employee of such person, shall—

   "(1) place in any liquor bottle any distilled spirits whatsoever other than those contained in such bottle at the time of stamping under the provisions of this chapter; or

   "(2) possess any liquor bottle in which any distilled spirits have been placed in violation of the provisions of paragraph (1); or

   "(3) by the addition of any substance whatsoever to any liquor bottle, in any manner alter or increase any portion of the original contents contained in such bottle at the time of stamping under the provisions of this chapter; or

   "(4) possess any liquor bottle, any portion of the contents of which has been altered or increased in violation of the provisions of paragraph (3);

   except that the Secretary or his delegate may by regulations authorize the reuse of liquor bottles, under such conditions as he may by regulations prescribe, if the liquor bottles are to be again stamped under the provisions of this chapter. When used in this subsection the term 'liquor bottle' shall mean a liquor bottle or other container which has been used for the bottling or packaging of distilled spirits under regulations issued pursuant to subsection (a)."

a pretense to the bartender concerning "a little argument about the proof of the bottle", the agents surreptitiously marked, for their own later identification, a Cutty Sark scotch bottle and a Seagram V.O. bottle, which bottles were nearing the empty mark. The agents returned to the 61 Lounge later that same morning, at approximately 9:00 a. m. Based upon watching appellant carry a marked bottle, which at this time was empty, to a rear storeroom and her return with four of them filled, Agent Overturf placed her under arrest. The testimony of Overturf on direct examination discloses that, at the time of arrest, the following transpired:

"Q. What else, if anything, did you do, sir, at that time?

"A. At this time, noting that the two bottles were now full, I told Mrs. Vinyard that she was under arrest for violation of the Internal Revenue law for refilling her whisky bottles.

"Q. What else did you do?

"A. Mrs. Vinyard said, 'May I call my attorney?' And I said, 'Yes. Go ahead.'

"Q. Did she, at that time, make a telephone call?

"A. She, at that time, placed a telephone call right from behind the bar.

"Q. Were you able to hear what she said?

"A. She spoke, and she said that, 'I have just been arrested,' and she said, 'I don't know. I think it is for refilling the bottles.' She said, 'The man on the telephone wants to talk to you.'

"Q. And did you talk to the man on the telephone?

"A. Mrs. Vinyard handed me the telephone, and [the] man identified himself as her attorney, as a Mr. Maloney."

Following the telephone call the agents took into their possession several of the bottles as evidence. Appellant was then informed that she would be taken to the Federal Building in St. Louis, and the three began the drive to that building with appellant riding with Agent Overturf in a government vehicle and Agent Wallace following behind in his private car. It was during the drive to the Federal Building, the government contended, that appellant first approached Overturf concerning the possibility of a bribe.

Viewing the evidence in a light most favorable to the government, as we must do, Smith v. United States, 8 Cir., 1964, 331 F.2d 265, 278; Slocum v. United States, 8 Cir., 1963, 325 F.2d 465, 468; Thogmartin v. United States, 8 Cir., 1963, 313 F.2d 589, 590; Koop v. United States, 8 Cir., 1961, 296 F.2d 53, 54, the record indicates that the following conversation occurred between appellant and Overturf, as testified to by the latter:

"Q. Did you have a conversation with her at that time, sir?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. What was the conversation that you had with her, sir?

"A. At this time, Mrs. Vinyard said, 'Isn't there some way we can settle this?' I said, 'Yes. Have your attorney contact the United States Attorney and see about getting an offer in compromise in lieu of criminal liability.' I said, 'We have had five or six of these cases recently, and most of them have been settled under submission of an offer of compromise in the amount of $500.00.'

\* \* \* \* \* \*

"A. She said, 'Yes, but what about the State?' I said, 'Well, we cooperate with the State, and they get a copy of our report. \* \* \*'

\* \* \* \* \* \*

"A. She said, 'Well, I am not worried about the Federal Government. I am worried about the State.' She said, 'Can't we settle this among ourself?' [sic] I said, 'What do you mean?' She said, 'You give me the whisky and the

papers back and forget about it.' She said, 'I know you fellows don't make much money and you can sure use the money.'

\*　　\*　　\*　　\*　　\*　　\*

"A. \* \* \* She said, 'I mean can't we settle this between you and I?' I said, 'Miss Vinyard, I got a responsible position. I have only got a few years to go to retire.' I said, 'I can't jeopardize my position like this.' She said, 'Well, no one will know about it but you and me. All you got to do is give me the whisky and papers and not make a report that you have ever been to my place.'

"She said, 'I am not afraid of the Federal Government.' She said, 'I am afraid of the State.' She said, 'I can't afford to be closed up.' She said, 'You can use the money more than the United States Government can, and only you and I will know it.'

"Q. And what, if anything, did you say to her, sir?

"A. I said, 'Well, how about my partner Wallace? He'll know it,' and she said, 'Well, you talk to him.' So about this point here we are in the vicinity of Beaumont and Olive Street.

"Q. What, if anything, did you do at that time, sir?

"A. I motioned Wallace to follow in behind me. I turned right and pulled up on a parking lot at Beaumont and Pine."

The record further discloses that while the automobiles were temporarily parked at this location, appellant repeated her offer of a bribe to Agent Wallace.

Upon arrival at the Federal Building, Wallace placed the bottles in the locked trunk of the government vehicle. They then entered the building and rode the elevator to their office. Since this was a Saturday, those persons entering the building were required to sign a form in the elevator stating their name, room destination and time in and time out. Overturf signed his name and Wallace's but did not sign in for appellant, later claiming that it had never been required of him to sign in prisoners. During the time the agents and appellant were in the Alcohol and Tobacco Tax office, appellant's personal history was recorded and a pretense of taking her fingerprints was made. With regard to the fingerprint matter, the testimony of Overturf indicates that the following transpired:

"A. \* \* \* but when I took her over to the fingerprint stand, she said, 'Well, if we are going to settle this among ourself, [sic] why do you have to take fingerprints?'

"Q. What did you say, if anything, then, sir?

"A. I said, 'Well, I don't know. We are going to have to make this look, appear good, because if you go right back to the bar without being fingerprinted, people are going to know something has went wrong here.' She said, 'Can't you just put a little ink on my finger and rub it off?' I said, 'Well, that's all right with me,' \* \* \*."

Following those procedures in the office, appellant was released on her personal recognizance. The record discloses that the above-described actions of Overturf and Wallace were motivated by their intention to stall for time in order to "notify the Inspection Service before any money" was passed on the offer.

Very shortly after the agents released appellant, Overturf called Inspector Gene Walter Blackwelder of the Internal Revenue Inspection Service at approximately 12:30 p. m., August 10, 1963. Thomas L. French, a Supervisory Internal Revenue Inspector, was also contacted. The investigatory personnel then spent the afternoon at Overturf's home preparing Minifon Wire Recorders to be concealed on the persons of Overturf and Wallace, and a tape recorder which was secreted in a briefcase. At approximately 5:30 p. m. Overturf called appellant to ask if she had the money ready and to make an appointment with her to collect it that evening.

Prior to meeting appellant later that evening, Agents Overturf and Wallace were searched and were equipped with the Minifon recording devices. The tape recorder hidden in a briefcase was placed on the rear seat of their automobile and the automobile two-way radio was activated for audio confirmation of any conversation which might take place within the car.

At approximately 8:00 that evening the agents met appellant at the 61 Lounge and she then rode with them in their automobile to a nearby parking lot. Upon a pre-planned guise that Wallace was still not convinced that he should accept the bribe, appellant was led to repeat her offer and made several incriminating statements which were recorded and which were admitted at the trial. She then gave envelopes, each containing $250, to both Overturf and Wallace. Thereupon appellant was arrested on the charge of bribery for which she has been convicted.

Three separate grounds for reversal of appellant's conviction are urged:

1. That her arrest in the first instance was unlawful and accordingly all evidence should have been suppressed and the indictment dismissed, basing the claim of unlawful arrest on this court's opinion in Wisniewski v. United States, 8 Cir., 1957, 247 F.2d 292, 293.

2. That as a matter of law appellant was a victim of entrapment by agents of the government and her motions for judgment of acquittal on this ground should have been sustained.

3. That under the rule recently announced by the Supreme Court in Massiah v. United States, 1964, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, the incriminating statements made by appellant following her arrest and which she was induced to repeat for surreptitious recording, all occurring after appellant had retained counsel, were improperly received into evidence contrary to the provisions of the Sixth Amendment.

As to appellant's first claimed error, it should be noted that the judgment of conviction which was reversed by this court in Wisniewski v. United States, supra, was based on a finding of a violation of a *regulation* then in effect which was issued by the Secretary of the Treasury on the theory that he found it "necessary to protect the revenue". The regulation then in effect, violation of which Wisniewski was found guilty in the District Court, provided as follows:

"Reuse of containers. No liquor bottle or other authorized container shall be reused for the packaging of distilled spirits except as provided in Sec. 175.62, nor shall the original contents, or any portion of such original contents, remaining in a liquor bottle or other authorized container be increased by the addition of any substance."

The statute which authorized the Secretary of the Treasury to promulgate regulations such as the above "whenever in his judgment such action is necessary to protect the revenue" was 26 U.S.C.A. § 2871 [I.R.C.1939],[3] the pertinent parts of which were determined by the court, 247 F.2d at 295, to be:

"Whenever in his judgment such action is necessary to protect the revenue, the Secretary is authorized, by the regulations prescribed by him * * * (1) to regulate the size, branding, marketing, sale, resale, possession, use, and re-use of containers * * * designed or intended for use for the sale at retail of distilled spirits * * *. Whoever willfully violates the provisions of any regulation prescribed, or the terms or conditions of any permit issued, pursuant to the authorization contained in this section, and any officer, director, or agent of any corporation who knowingly participates in such violation, shall, upon conviction, be fined not more than $1,000,

3. The corresponding section in the 1954 Internal Revenue Code prior to the 1958 amendment was 26 U.S.C.A. § 5214.

or be imprisoned for not more than two years, or both * * *."

In reversing the Wisniewski conviction, this court held, in effect, that the defendant's act of increasing the original contents of a marked liquor bottle by an addition of distilled spirits upon which a tax had been paid did not constitute a violation of a regulation promulgated "to protect the revenue" and that the regulation prohibiting an increase by addition of *any substance* to the original contents of a liquor bottle or other authorized container applied only to substances, including distilled liquors, on which a tax is due.

Approximately one year after Wisniewski was decided, September 2, 1958, Congress amended the statute and recodified it as 26 U.S.C.A. § 5301(c), the text of which is set out in f. n. 2, supra, and the effective date of which was July 1, 1959. The new statute encompassed both the old law and the prior regulation and included certain key words as indicated in that portion of the legislative history quoted infra. The Report of the Senate Committee on Finance, Report No. 2090, published in 1958 U.S.Code Cong. & Adm. News, p. 4395, specifically mentions Wisniewski and expresses quite clearly an intent to circumvent that decision. In discussing the intended effect of the amendment, the committee stated in its report at page 4563 of 1958 U.S.Code Cong. & Adm. News:

"The regulations prescribed under existing law * * * have recently been restrictively construed in certain court decisions. The use of the word 'whatsoever' in the phrases 'any distilled spirits whatsoever' and 'any substance whatsoever' *makes it completely clear that the construction given to the regulations under existing law in U. S. [United States] v. Goldberg et al. (8 Cir. 1955, 255 F.2d 180) and in Wisniewski v. U. S. [United States] (8 Cir. 1957, 247 F. 2d 292) does not apply with respect to the provisions of this subsection.* The language of this subsection as contained in the House bill and as restated by your committee *is intended to obviate any question that its provisions are applicable, whether or not the tax has been paid or determined on the distilled spirits used in refilling and whether or not the substance used to alter the original contents is taxable under the internal revenue laws."* (Emphasis supplied.)

The 1958 amendment and the legislative history quoted above clearly reflect a congressional intent to make criminal the act for which appellant here was initially arrested. Our Wisniewski opinion based upon the violation of a *regulation* no longer in effect and replaced by a statute specifically enacted to avoid Wisniewski, can be of no help to the appellant.

We find no substance to appellant's assertion that Wisnewski was expressly affirmed by this court after the 1958 amendment in Blumenfield v. United States, 8 Cir., 1962, 306 F.2d 892, 900. Not only is Blumenfield factually distinguishable from Wisniewski and the instant case, but the acts upon which the conviction in Blumenfield was based occurred prior to the effective date of the 1958 amendment.

Even if we assume, *arguendo*, that the initial arrest for refilling of liquor bottles was unlawful, the legality of that arrest is immaterial in a prosecution for the subsequent bribery of the arresting officer. When the agents entered the appellant's bar they did so under color of law. They believed they had the authority and the duty to make an arrest, having observed violations of § 5301(c) which they believed to be valid. When Mrs. Vinyard offered the $500 bribe, she knew that Overturf and Wallace were agents of the United States government and were acting in their official capacity. For the payment of $500 she attempted to get them to not make a report of their observations, to return to her the evidence they had seized at her place of business and to give her the notes they had prepared during interviews with her. United States v. Troop, 7 Cir., 1956, 235 F.2d 123, dealt with a somewhat similar

situation. The court said there, at page 124:

"On this appeal the principal reliance of defendant is that the evidence does not sustain a charge of bribery under § 201, Title 18 U.S. Code. Defendant argues that as the search warrant was invalid there was no matter then pending before Agent Emrich in his official capacity, hence said § 201 does not apply. We do not agree.

"When the Narcotic Agents, including Emrich, entered the apartment at 2004 South State Street, they did so under color of authority. They believed they had authority to search the premises. When defendant offered a bribe of $1500.00 he believed and understood the Agents were officers of the United States and were acting in their official capacities. Defendant endeavored to persuade the agents to act in violation of their official duties.

\*   \*   \*   \*   \*   \*

"We hold the offense of attempted bribery of a Federal Officer is complete upon the tender of the bribe to such Officer with intent to influence his decisions and acts in an official capacity. We think it is entirely immaterial that for some reason, subsequently determined, the Officer could not have brought about the result desired by the person offering the bribe. We think the authorities are in accord."

The court then cited and quoted with approval from Kemler v. United States, 1 Cir., 1942, 133 F.2d 235, where that court said at page 238:

"The clear purpose of the statute is to protect the public from the evil consequences of corruption in the public service. *Thus the gravamen of the offense described therein is the giving or offering of a bribe to a person acting on behalf of the United States for the purpose of influencing official conduct.* Obviously no one would give or offer a bribe unless he expected to gain some advantage thereby, and since attempting to gain an advantage by this means is the evil which the statute is designed to prevent, it can make no difference if after the act is done the doer discovers that for some reason or another, be it a mistake on his part or a mistake on the part of some officer or agency of the United States, there was actually no occasion for him to have done it. *The statute is violated when a bribe is given or an offer to bribe is made regardless of the occasion therefor, provided it is done with the requisite intent and provided the acceptor or the offeree of the bribe is a person of the sort described in the statute.*" (Emphasis supplied.)

The general rule is stated in 12 Am. Jur.2d § 13, p. 757, as follows:

"In determining the criminality of an act as bribery it is immaterial that the official action or measure taken, or expected or promised to be taken, under the influence of the bribe would be invalid because the officer had no authority to do the act in question, or would be invalid because the authorizing statute or executive order was invalid. \* \* \*"

See, also, 11 C.J.S. Bribery § 2e(3), pp. 850–851.

"It is not essential that the official action induced by the bribe be lawful; it is sufficient that it is official in form and done under color of office, so that the offer, or receipt by an authorized officer, of a bribe to release one from arrest is criminal without regard to the legality of the arrest.

"The official act influenced by the bribe need not be lawful to render one liable for bribery, but need only be official in form, and done under color of office. In other words, as long as the officer's act has actual relation to his official employment, it is immaterial that the law imposes no duty on him to act or that he has

no direct authority to act. Thus it is not necessary, in order to constitute bribery, that the public official be influenced in regard to a measure which can be legally enforced.

"*Legality of arrest.* Although there is authority that one who offers to bribe an officer to release a person from arrest is not guilty of bribery unless the arrest was a legal one, it has been held that the acceptance of a bribe in such a situation is criminal regardless of whether the officer had the duty to arrest, whether the prisoner had previously been indicted and a warrant issued for his arrest, or whether the person arrested had in fact committed an offense. Likewise, an offer of a bribe not to make an arrest is criminal regardless of guilt of the person of the offense for which he was apprehended, and it is not a defense that the law under which the arrest was about to be made was invalid, or was later changed so as not to include the offense in question; nor can accused contest the regularity of the search warrant or the validity of the indictment afterward returned for the offense for which the arrest was made. \* \* \* "

See, also, People v. Guillory, 1960, 178 Cal.App.2d 854, 3 Cal.Rptr. 415, 80 A.L.R. 2d 1077, 1079, 1080.

Accordingly, we hold that legality of the first arrest was not an essential prerequisite to conviction for a violation of the Bribery Statute based on happenings occurring subsequent to such arrest.

■ Appellant's next contention that the trial court erred in refusing to rule in her favor on her asserted defense of entrapment as a matter of law is equally without merit. The well-established rule in the federal courts in the defense of entrapment when the evidence is in conflict was briefly but accurately described in the following:

Hunt v. United States, 1958, 103 U.S. App.D.C. 309, 258 F.2d 161, 162:

" \* \* \* [Appellant's] defense is that he was entrapped into these acts by the police agent. The testimony was conflicting; appellant's evidence arguably made out entrapment as a matter of law and the Government's evidence negated entrapment as a matter of law. The instructions were free of prejudicial error, and thus the jury's verdict indicating belief of the Government's version of the transactions is conclusive."

United States v. Holmes, 3 Cir., 1948, 168 F.2d 888, 891:

"Defendant contends that \* \* \* entrapment exists. It is sufficient to note, however, that the court instructed the jury concisely and adequately concerning the elements of entrapment, and that the jury verdict is dispositive of the issue. See United States v. Brandenburg, 3 Cir., 1947, 162 F.2d 980, 981, 982, cert. denied 1947, 332 U.S. 769, 68 S. Ct. 80 [92 L.Ed. 354]."

See, also, United States v. De Normand, 2 Cir., 1945, 149 F.2d 622, 624.

■ We have carefully examined the record here and find that entrapment has not been shown as a matter of law. The evidence on that issue was conflicting. Appellant testified that the idea of offering a bribe did not originate in her mind, while the government's witnesses testified that it did. The court fully and fairly instructed the jury on entrapment. No objection was made thereto and no proper exception was taken to the charge. Accordingly, the jury's verdict of guilty is completely dispositive of the asserted defense. Roth v. United States, 8 Cir., 1959, 270 F.2d 655; Hunt v. United States; United States v. Holmes; United States v. De Normand, all supra.

For her third claimed error, appellant cites and relies on the recent opinion of the Supreme Court in Massiah v. United States, 1964, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, and urges the application here of the exclusionary rule there announced. In that case the petitioner was indicted for violating the narcotic

laws. He retained a lawyer, pleaded not guilty and was released on bail. While he was free on bail, a federal agent, by surreptitious means (the installation of a radio transmitter in the automobile of a co-defendant with the latter's consent) listened to incriminating statements made by the petitioner. Petitioner was convicted. The Court of Appeals for the Second Circuit, with one judge dissenting, United States v. Massiah, 2 Cir., 1962, 307 F.2d 62, affirmed. Certiorari was granted "to consider whether, under the circumstances here presented, the prosecution's use at the trial of evidence of the petitioner's own incriminating statements deprived him of any right secured to him under the Federal Constitution. 374 U.S. 805 [83 S.Ct. 1698, 10 L.Ed.2d 1030]." In reversing, with three Justices dissenting, the court stated: 377 U.S. 205, 84 S.Ct. 1202

> "Here we deal not with a state court conviction, but with a federal case, where the specific guarantee of the Sixth Amendment directly applies.[6] Johnson v. Zerbst, 304 U.S.
>
> 6. 'In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.'
>
> 458 [58 S.Ct. 1019, 82 L.Ed. 1461]. *We hold that the petitioner was denied the basic protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. * * *"* (Emphasis supplied.)

■ Appellant seeks to have the rule of Massiah do service for her herein. We think Massiah may not be so construed. When appellant was first arrested, the charge for which the arrest was made was the refilling of bottles in violation of 26 U.S.C.A. § 5301(c). At that time she employed an attorney to represent her for the purpose of defending against the refilling charge. When she, thereafter, made her first offer to Over-

turf and Wallace to pay them $500 to return the evidence seized, drop any charge and release her, she was committing a different and separate offense—that of attempted bribery. The receipt into evidence of the testimony of Overturf and Wallace as to what occurred was entirely proper, even though she was represented at the time by an attorney in connection with the first offense, that for which she had been arrested. To hold otherwise is to say that a person arrested for one offense (refilling of bottles in violation of 26 U.S.C.A. § 5301(c)) may not be held accountable for the commission of a subsequent and different offense (bribery, in violation of 18 U.S.C.A. § 201) unless his counsel, employed in the refilling of bottles offense, is present and presumably approving of the acts constituting the attempted bribery offense. It would be holding that the employment of counsel in the first offense gave appellant an insulated status against the commission of subsequent crime or immunized him from responsibility for his subsequent criminal acts. That is not the meaning of Massiah. Its ruling is limited to holding, as constitutionally improper, the receipt into evidence of statements surreptitiously elicited from a defendant after indictment and in the absence of his counsel, such statements intended to be used in prosecution of the offense for which he had been indicted. Like reasoning applies to the acceptance into evidence of the recordings of appellant's statements which repeated or reaffirmed her prior attempted bribery, this time with seeming success in the passage of two envelopes, each containing $250 in cash.

As to the propriety of accepting into evidence offers to bribe made in private, but surreptitiously recorded, so that they could be used to verify or confirm the offer, the Supreme Court in Lopez v. United States, 1963, 373 U.S. 427, 438, 83 S.Ct. 1381, 1387, 10 L.Ed.2d 462, said:

> "* * * We decline to hold that whenever an offer of a bribe is made in private, and the offeree does not intend to accept, that offer is a con-

stitutionally protected communication."

Therein, the petitioner claimed that the admission of a wire recording of his conversation surreptitiously made and without his knowledge was a violation of his constitutional rights. The Supreme Court stated, at page 439 of 373 U.S., at page 1388 of 83 S.Ct.:

"Stripped to its essentials, petitioner's argument amounts to saying that he has a constitutional right to rely on possible flaws in the agent's memory, or to challenge the agent's credibility without being beset by corroborating evidence that is not susceptible of impeachment. For no other argument can justify excluding an accurate version of a conversation that the agent could testify to from memory. We think the risk that petitioner took in offering a bribe to Davis fairly included the risk that the offer would be accurately reproduced in court, whether by faultless memory or mechanical recording."

In a separately concurring opinion, Chief Justice Warren said at page 442 of 373 U.S., at page 1389 of 83 S.Ct.:

" * * * The only purpose the recording served was to protect the credibility of Davis against that of a man who wished to corrupt a public servant in the performance of his public trust. I find nothing unfair in this procedure. Tax agents like Agent Davis are required to examine the tax returns of suspected tax evaders as a necessary part of our national taxation system. Many of these taxpayers interviewed are integral parts of the underworld. In the performance of their duty, agents are thus often faced with situations where proof of an attempted bribe will be a matter of their word against that of the tax evader and perhaps some of his associates. They should not be defenseless against outright denials or claims of entrapment, claims which, if not open to conclusive refutation, will undermine the reputation of the individual agent for honesty and the public's confidence in his work. Where confronted with such a situation, it is only fair that an agent be permitted to support his credibility with a recording as Agent Davis did in this case."

Cf. United States v. Beno, 2 Cir., decided May 28, 1964, 333 F.2d 669, and United States v. Guerra, 2 Cir., decided June 5, 1964, 334 F.2d 138.

Obviously, the situation here does not require that we pass upon the question of whether, had the appellant been tried on the initial charge of refilling liquor bottles, evidence obtained after she had retained counsel for the defense thereof and in the absence of that counsel, but before indictment, could have been used to convict her of that charge.

Finding no error in the record and concluding that appellant received a fair trial, we affirm the judgment of conviction.