**UNITED STATES of America**

v.

**Maurice S. OSSER, Appellant.**

**No. 73–1061.**

United States Court of Appeals, Third Circuit.

Argued June 12, 1973.

Decided July 30, 1973.

Certiorari Denied Nov. 12, 1973.
See 94 S.Ct. 457.

Benjamin Paul, Philadelphia, Pa., Frederic J. Barnett, Mark J. Kadish, Gerald Alch, Bailey, Alch & Gills, Boston, Mass., for appellant.

Peter F. Vaira, U. S. Dept. of Justice, Philadelphia, Pa., for appellee.

Before GIBBONS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal primarily presents an unusual issue of whether the Government's tapping of a telephone conversation between an indicted defendant and a potential government witness in the absence of defendant's counsel was in violation of the principles set forth in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). We find the *Massiah* principles inapplicable to the circumstances presented here and affirm.

Defendant-appellant Maurice S. Osser served as a County Commissioner (title later changed to City Election Commissioner) in Philadelphia for more than two decades. During early 1972, a federal grand jury investigated various frauds on the city during Osser's term of office. The grand jury indicted Osser on February 25, 1972, for involvement in fraudulent schemes involving rigging of contracts for election machines. That .indictment, as amended May 17 and May 24, 1972, led to another trial (District Court No. 72–349) in the Eastern District of Pennsylvania separate from the trial of the indictment involved in the present case.

Following presentment of the first indictment, the grand jury continued to hear evidence against Osser. In March 1972 it subpoenaed Leon Freedman in connection with an investigation of rig-

ging of city council minutes and election ballot printing contracts. Freedman originally invoked the fifth amendment at the hearing, but later decided to cooperate with the Government after receiving a promise of immunity.

On May 17, 1972, Freedman received a telephone call from Osser. Osser, apparently unaware that Freedman had already decided to cooperate with the Government, urged him not to mention Osser's name to the grand jury. Osser visited Freedman the next day at Freedman's store. Freedman told Osser that he was going to see Government officials on May 19; Osser said he would call Freedman again to find out about that meeting.

Later on May 18, Freedman and his attorney met with a Department of Justice attorney and reported Osser's contacts with Freedman. The Government attorney asked Freedman if the Government could tape the expected phone call from Osser. The attorney told Freedman his promised immunity would not be affected by his decision whether or not to consent to the taping. After meeting alone with his attorney, Freedman consented, was instructed how to operate a transmitter placed on his person, and had a recorder placed on his store phone. The Government gave Freedman no instructions on what he should say to Osser.

Osser called Freedman on May 19. He again pleaded with Freedman not to tell the Government of their previous commission splitting practices. The tape of the Freedman-Osser conversation was played in the trial of the case sub judice, following a hearing on, and denial of, a motion to suppress its use.

The grand jury on June 28, 1972, returned a second indictment against Osser, charging nine counts of mail fraud, 18 U.S.C. §§ 1341, 2, and one count of conspiracy, 18 U.S.C. § 371, for his alleged involvement in rigging city printing contracts, and one count of endeavoring to obstruct justice, 18 U.S.C. § 1510, based on his entreaties to Freedman. This indictment (District Court No. 72–384) led to the conviction under appeal here. Two mail fraud counts were dismissed at trial by the court; the jury returned guilty verdicts on the other nine counts. Osser was sentenced to two consecutive three year terms and fined $19,000.

The evidence at trial disclosed that Freedman, a salesman for Weiss Printing House, had sought Osser's assistance in 1957 to procure city council printing contracts for Weiss. Freedman subsequently paid one-third of his fifteen percent commission from Weiss to Osser in return for his actions in guaranteeing the contract to Weiss. In 1965, Freedman's commission was increased, and he increased his payments to Osser to six and one-half per cent for about three years. The Osser-Freedman arrangement eventually also embraced election ballot printing for the city. Splitting of Freedman's commission from Weiss continued through 1971.

In order to demonstrate the scheme's connection with the United States mails, a necessary element of the federal crime, the Government proved the means by which Osser received his payments. Philadelphia paid Weiss by check. Some of these checks were mailed. Weiss paid Freedman his commission by check; Freedman paid Osser in cash.

Appellant Osser claims reversible error was committed by the trial court both (1) in admitting into evidence the taped conversation between Osser and Freedman; and (2) in failing to instruct the jury that use of the mails must be an integral part of the alleged scheme to defraud.

I

Appellant's objection to the taped telephone conversation is two-fold: (A) Freedman's consent was insufficient to justify admission of the tape; (B) the taping deprived Osser of his right to counsel as set forth in Massiah v. United States.

## A

Appellant's contention that Freedman's consent was insufficient is premised on the principle that taping of conversations of persons acting undercover for the Government is permissible only if those persons consent freely to the taping. United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957); and 18 U.S.C. § 2511(2)(c):

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or *one of the parties to the communication has given prior consent to such interception.* [Emphasis added.]

*See also* United States v. Riccobene, 320 F.Supp. 196, 202–203 (E.D.Pa.1970), aff'd per curiam, 451 F.2d 586 (3d Cir. 1971).

Appellant argues that at the time Freedman consented to the taping, any consent he made could not have been voluntary because he had yet to receive officially his promised grant of immunity. Appellant further argues the Government attorney's assurance that immunity did not depend on whether or not Freedman consented to the taping was merely self-serving.

■ We find no basis in the suppression hearing record for reversing the district court determination that Freedman's consent was given voluntarily. Freedman himself testified clearly that he did not feel pressured by the Government request and that he believed his promised immunity would be forthcoming whether or not he consented. Nothing in the record indicates Freedman's belief was unwarranted. No implied threats were made to Freedman; he was not coerced. The present factual situation is thus quite different from that in United States v. Laughlin, 222 F.Supp. 264 (D.D.C.1963). There, the consent

to tape was found involuntary in light of the "consentor's" testimony that "I felt I had to cooperate," 222 F.Supp. at 266, under the implied threat of indictment if she did not. *Id.* at 268.

■ Although it is possible to infer from the circumstances of Freedman's consent that he hoped by continuing cooperation with the Government not to disturb forthcoming immunity, such hopes alone do not render his consent involuntary. Our inquiry on appeal is limited to whether the consent was voluntary and uncoerced, not whether the motivations for it were altruistic or self-seeking. As the court said with respect to hopes for leniency in United States v. Zarkin, 250 F.Supp. 728, 737 (D.C.C.1966):

> We can think of no time in which a party to a telephone conversation would permit the police to intercept that conversation when he, himself, would not seek something from the police in return, assuming he is of sound mind and knows the police are police. He might merely be seeking police protection from threatening phone calls. Or, he might be an undercover policeman who seeks his pay check. Or, indeed, he may be seeking leniency. However, so long as pressure is not initiated by the police for the purpose of overbearing the will of the party, this Court does not believe that the authorization given by the party is involuntary.

## B

■ Appellant's second attack on admission of the tape of the telephone conversation at trial is based on a contention that the conversation was recorded after Osser was indicted and in the absence of his counsel, thus depriving defendant of his right to counsel's assistance at a critical stage of the prosecution. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Appellant argues that by virtue of his indictment on February 25, 1972, (which indictment was superseded by

amended indictments on May 17 and May 24) the taping of his conversation with Freedman on May 19 was a pretrial confrontation at which he had a right to counsel. He contends that this first indictment (District Court No. 72–349) was "cut from the same block of wood" as the subsequent indictment (District Court No. 73–384) that led to conviction in the case now appealed. Both indictments involved alleged activities of Osser in rigging city contracts between 1965 and 1972; one co-conspirator was named in both. Thus, argues appellant, the May 19 surveillance was part of the Government's continuing investigation of the circumstances of the first indictment. Stripped of its legal trappings, appellant's disingenuous contention is that notwithstanding he initiated the telephone call to a potential witness for the Government in an alleged effort to obstruct justice and seal his lips in the ongoing investigation, taping of that conversation, even with the witness's consent, violated appellant's constitutional rights since he was not informed of the taping and afforded the benefit of counsel.

Appellant's effort to fit his situation into the mold condemned in *Massiah* is unavailing. Significant factual differences convince us that the exclusionary rule of *Massiah* should have no application here.

In *Massiah*, defendant was indicted for drug possession, pleaded not guilty, and was released on bail. A few days later, co-defendant Colson decided to cooperate with the continuing police investigation into Massiah and Colson's drug activities. Colson permitted Government agents to install a transmitter in his automobile and subsequently held a lengthy conversation with Massiah in the car. The tape of that conversation was introduced into evidence at Massiah's trial.

The Court held that Massiah had been deprived of his sixth amendment right to counsel because "there was used against him at his trial evidence of his own incriminating words, which federal agents had *deliberately elicited from him* after he had been indicted and in the absence of his counsel." 377 U.S. at 206, 84 S.Ct. at 1203. [Emphasis added.] The Court compared the taping of Massiah's conversation with Colson to the coercive interrogation of defendant in the absence of counsel in Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959),[1] equating the "deliberate eliciting" of confessions from Massiah with coercive interrogation. The court indicated the deprivation of the right to counsel in *Massiah* was even more grievous than its deprivation in coerced confession cases such as *Spano* because Massiah was unaware he was under interrogation. 377 U.S. at 206, 84 S.Ct. 1199.

The crucial fact for the Court in *Massiah* was that the Government was *interrogating* the defendant. The interrogation was surreptitious so that Massiah himself was unaware that he was being questioned; but the consequences of the Government's actions were, therefore, more effective than had he been openly interrogated, and statements of incrimination were deliberately elicited from an already indicted, uncounseled defendant. The Court thus concluded that the requirement of presence of counsel applied in this pre-trial confrontation between Government and defendant just as it also applied at arraignment, Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1969), and at preliminary hearing, White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). *Massiah*, 377 U.S. at 205, 84 S.Ct. 1199.

---

1. The five judge majority opinion in *Spano* had held petitioner's conviction could not stand on the basis of fourteenth amendment standards proscribing overbearing of a defendant's mind to obtain a confession. The four concurring justices argued the fourteenth amendment also required presence of counsel at the interrogation in question. It was on the argument of the four concurring justices that Justice Stewart relied in *Massiah*. 377 U.S. at 204, 84 S.Ct. 1199.

*Massiah* was clearly predicated on existence of the right to counsel after a defendant has been indicted. In the present case, at the time of taping, Osser had been indicted for none of the offenses for which he was subsequently convicted. *Massiah* is applicable here only if we accept appellant's argument that the *Massiah* protection attached after his indictment in the separate suit involving election machine contracts (District Court Civil No. 72–349) and thus prevented the Government from using incriminating statements Osser made subsequently for prosecution of the present case (District Court No. 72–384). We reject that argument.

The district court discussed extensively the differences between the indictments in its memorandum opinion and order denying Osser a new trial as follows:

> The pending indictment for which Mr. Osser had engaged counsel at the time of the telephone conversation charged the defendant with interference with commerce by threat or violence and conspiracy under 18 U.S.C. § 1951, and mail fraud under 18 U.S.C. § 1341. In essence, that indictment charged that the defendant along with Thomas McHenry of the Shoup Voting Machine Corporation conspired from January 1965 to January 1972 to obstruct and affect commerce by extortion through the purchase of voting machines for the City of Philadelphia. In that eighteen count indictment, James Dunlap is named with respect to one overt act in one count in the alleged extortion violation of 18 U.S.C. § 1951. The mail fraud involved the mailing of invitations to bid, awards to the Shoup Voting Machine Corporation and the mailing of bids to the Procurement Department of the City of Philadelphia.

> The present indictment under which Mr. Osser stands convicted involved mail fraud and conspiracy and endeavoring to obstruct justice. The named unindicted co-conspirators are Fred Weiss and Leon Freedman. The alleged conspiracy occurred between 1956 and 1972 in which it is charged that Mr. Osser as City Commissioner joined with the other conspirators whereby there would be fraudulent bidding for printing contracts, the essence of the scheme being that by "rigging bids," Weiss Printing House would obtain all of the official City printing contracts and Dunlap Printing Company would obtain all of the election printing contracts for the City of Philadelphia. The scheme involved knowingly submitting non-competitive bids and the receipt by Mr. Osser of secret "commissions" of 5% of the gross amount of the contract awards for City printing obtained by Weiss Printing House. The mailings concerned the mailing of the checks by the City of Philadelphia to Weiss Printing House in payment for its services. The endeavoring to obstruct justice charge arises primarily from the contents of the taped telephone conversation and other alleged conversations testified to by Mr. Freedman between Mr. Osser and Mr. Freedman during May of 1972.

> The two indictments display no more than a thin veneer of similarity. They exhibit basic differences sufficient to establish separate and distinct offenses and indictments. The gravamen of each indictment emanates from two entirely different patterns of unlawful conduct. The earlier indictment primarily concerns extortionate schemes under 18 U.S.C. § 1951 in regard to the purchase of voting machines from the Shoup Voting Machine Corporation. The fraudulent scheme under 18 U.S.C. § 1341 involved in the present indictment concerns City contracts for printing of election materials and official City materials. The two indictments are obviously separate and distinct offenses in scope and subject matter. A basic difference also exists in the statutory violations alleged in the indictments. While both indictments allege mail fraud and conspiracy, the basic schemes giving rise to the fraudulent use of the mails and the conspiracies

are disparate. Furthermore, the actual use of the mails is entirely different and separate. In the earlier indictment the mailing involved inviting and awarding bids on voting machines whereas in the instant indictment, the mailings involved City payments for contracts for public printing. In addition, in the earlier indictment the charge is based on Section 1951 of the Criminal Code whereas the present indictment is based on Sections 1341 and 1510. The length of time of the two alleged conspiracies although over-lapping are for different periods of time. Finally, all possible co-conspirators except for the defendant and James Dunlap are dissimilar.

As of May 19, 1972, the day the Osser-Freedman conversation was taped, Osser had not yet been indicted for any involvement in a scheme with Freedman to rig Philadelphia printing contracts. The Government was still in the process of investigating those alleged crimes, and Freedman was a vital link in the chain of evidence being accumulated. Therefore, when Freedman informed the Government not only that Osser was committing incriminating actions in connection with that crime, but also that he appeared to be in the prosess of committing the additional crime of endeavoring to obstruct justice, no sixth amendment constitutional impediment existed to continued investigation. The conversation was taped, providing relevant evidence for use against Osser in the subsequent trial both on the mail fraud and obstruction of justice counts. *Massiah* did not require suppression of use of that evidence in the trial because Osser's right to assistance of counsel had not yet attached since there was at that point no indictment on those charges.

The Supreme Court considered a similar *Massiah* claim in Hoffa v. United States, 385 U.S. 293, 309–310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). A government informer had gathered evidence that defendant Hoffa was attempting to bribe jurors by sitting in his hotel room during the trial of the Test Fleet case. Subsequently, Hoffa was indicted for the bribery offense, and the informer's testimony was used against him. The Court dismissed with little difficulty defendant's assertion that *Massiah* prevented use of the informer's testimony because the informer had collected the evidence at a point after the right to counsel had attached. Although the Court spoke in terms of the defendant not having a right to be arrested—and thus have the right to counsel attach—prior to the time the informer gathered his information, implicit in its decision is the principle that the indictment in the Test Fleet case did not create a right of counsel which was violated in procuring information for a new, separate indictment.

A similar *Massiah* claim was denied in Vinyard v. United States, 335 F.2d 176 (8th Cir), cert. denied, 379 U.S. 930, 85 S.Ct. 327, 13 L.Ed.2d 342 (1964). Vinyard, arrested for refilling liquor bottles, subsequently attempted to bribe two government agents. The original charge was not tried, but the bribery charge resulted in a conviction. Vinyard argued that the agent testimony about the bribery was of a post-arrest, uncounseled statement to government agents, which could not be introduced at trial under the *Massiah* principle. The court rejected the claim on the ground *Massiah* only applied to post-indictment statements used to prove the offense for which defendant had originally been indicted.

It is true that in both *Hoffa* and *Vinyard*, the subsequent statements to government agents concerned crimes completely different from those originally charged. Appellant here argues that both cases are therefore distinguishable because the Osser-Freedman tape was used not only to prove the obstruction of justice charge, but also the printing contract rigging charge, which was in some respect similar to the previously charged election machine contract rigging charge. Appellant argues that to find *Massiah* inapplicable here would provide a "gaping loophole" since the Government could always separate mul-

tiple charges in related criminal activity, indict on some charges, continue investigations on the other charges, and thus collect uncounseled statements from the defendant.

We do not find such a gaping loophole created by our determination that the tape was admissible against Osser on all charges in the present case. The two indictments were significantly separable and different; we do not consider the crimes alleged in each to be multiple charges in related criminal activity. No indication exists that in taping the Freedman-Osser conversation the Government anticipated or sought further information to be used in the trial of the election machine rigging indictment.[2] Under these circumstances, we believe the principles enunciated in *Hoffa* and *Vinyard* are applicable to distinguish the present case from *Massiah*.

## II

Appellant's final contention is that the trial judge's instruction to the jury on the necessary elements of use of the United States mails in the mail fraud counts was insufficient. Appellant argues that the trial judge instructed only that proof was needed to show

> the use of the mails in carrying out the scheme to defraud were either known or reasonably foreseen by the defendant as a part of the scheme

when it was required that he instruct use of the mails was an "integral" part of the scheme. Appellant argues this error was crucial since evidence of use of the mails was limited to proof that seven of ninety-eight checks from Philadelphia to Weiss Printing House happened to be mailed. Thus, argues appellant, the jury under proper instructions might well have concluded that use of the mails was never foreseen as an "integral" part of the scheme.

■ Viewing the trial court's instructions as a whole, United States v. Thomas, 451 F.2d 760, 762 (3d Cir. 1971), we find no error. The court instructed, *inter alia*, that "use of the mails is an essential element of the charge . . . the Government must prove beyond a reasonable doubt that the defendant caused to be delivered by mail an envelope addressed to Weiss . . . . You must find that the mails were in fact used to carry out the scheme, and that the use of the mails was reasonably foreseeable. . . . you must make a two-fold inquiry. First: was there · a sufficient connection between the use of the mails and the scheme? And, second, if so, was there a sufficient connection between the mail use and the defendant?" The court's instructions therefore fully apprised the jury of the necessity of finding a connection between the scheme and foreseeable use of the mails. The charge was fully consistent with the elements of the crime established by 18 U.S.C. § 1341, as set forth in Pereira v. United States, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 (1954). We find no error.

■ Appellant Osser has belatedly raised in his reply brief an asserted error to which the Government has had no opportunity to respond. He claims error in admitting the Freedman-Osser conversation tape as substantive, rather than corroborative, evidence. At trial, Freedman did not testify as to his recollections of the conversation, although he did identify the tape as an accurate recording of the conversation. Defense counsel stated at trial, "I submit that the correct method would be to ask the witness [Freedman] what his personal recollection is of the tape recording." He did not, however, press the point; instead, he argued to the court what type of testimony from Freedman was required to lay a proper foundation of accuracy and completeness of the tape, as is required for its admission, citing United States v. McKeever, 169 F.Supp. 426 (S.D.N.Y.1958).

2. We are not presented with the question whether the tape could have been played in trial of the election machine contract rigging charges since the tape was not entered into evidence in that case.

We find no merit in this final contention of appellant. Nowhere in *Mc-Keever,* or in the other cases relied on by appellant, United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); and Bakes v. United States, 350 F.Supp. 547 (N.D.Ill.1972); do we find any indication that taped telephone conversations can be used only as corroborative evidence. *See especially Lopez,* 373 U.S. at 440 n.12, 83 S.Ct. at 1388; and *White,* 401 U.S. at 753, 91 S.Ct. at 1126:

> Nor should we be too ready to erect constitutional barriers to relevant and probative evidence which is also accurate and reliable. An electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent.

The judgment of the district court will be affirmed.