**UNITED STATES of America,**
**Plaintiff,**

v.

**Charles MERRITTS, Sr., and Donald**
**Hodges, Defendants.**

**Crim. No. 74–115–E.**

United States District Court,
E. D. Illinois.

Jan. 14, 1975.

---

Henry A. Schwarz, U. S. Atty., Jack A. Strellis, Michael J. Nester, Asst. U. S. Attys., East St. Louis, Ill., for plaintiff.

James J. Gomric, Belleville, Ill., for defendant Donald Hodges.

Edward Neville, East St. Louis, Ill., for defendant Charles Merritts, Sr.

## ORDER

FOREMAN, District Judge:

Defendants Charles Merritts, Sr., and Donald Hodges, currently under a one-count indictment for violations of 18 U. S.C. § 2 and § 1952, have filed Motions to Suppress certain electronic eavesdropping.

Merritts is President of the School Board District 189, East St. Louis, Illinois. He is charged with causing and Hodges is charged with aiding and abetting Merritts in causing the use of an interstate facility with the intent to commit a crime of violence, that is, to cause the death of Clyde Jordan, another member of School Board 189, to further an illegal activity without interference from Jordan. The illegal activity being the receiving of bribes from contractors and vendors doing business with School District 189. The indictment further charges that thereafter Merritts attempted to perform an act of bribery.

This is the second indictment returned against these defendants. The first

indictment (Criminal No. 74–75–E) charged them with a violation of 18 U.S.C. § 241, as well as one count substantially similar to the charge in the second indictment. The first indictment was returned September 25, 1974, and was dismissed by the United States Attorney with leave of Court pursuant to Rule 48(a), Federal Rules of Criminal Procedure, on December 12, 1974, the time of the arraignment for the charge in the second indictment. (Criminal No. 74–115–E)

Defendants seek to suppress (1) oral statements made by defendants to Marvin Schwartz from October 27, 1973 to December 12, 1974, inclusive; (2) oral statements made by defendants to James Kammermeyer, Jr., from August 15, 1974 to December 12, 1974, inclusive; and (3) oral statements made by defendants to Don Jones. Defendants contend that the failure to suppress these conversations would violate rights guaranteed them by the Fourth, Fifth and Sixth Amendments of the Constitution. As an alternative ground for suppression, they also assert that the Government failed to comply with the provisions of 18 U.S.C. § 2510 et seq. in recording the conversations.

Schwartz and Kammermeyer had been working with the FBI during that agency's investigation of certain alleged kickbacks and bribes. These two men carried electronic equipment which recorded conversations which they had with various individuals, including the defendants. Both Schwartz and Kammermeyer consented to the recording of these conversations. Neither defendant ever knew that his conversations were being recorded, and, of course, neither defendant consented to the recording of those conversations. Neither Schwartz nor Kammermeyer were employed by the Government at the time the conversations were being recorded, but both are currently receiving funds from the Government. Donald Jones is an FBI agent and he gave his consent to the recording of one conversation between himself and defendant Hodges in a St. Louis hotel room. Kammermeyer, Schwartz, and Jones, apparently had the confidences of the defendants who spoke freely and willingly to them.

■ The Government neither sought nor received court authorization for recording these conversations. Nevertheless, the defendants' reliance upon the Omnibus Crime Control and Safe Streets Act of 1968 is misplaced. The statute states that it shall not be unlawful for a person acting under color of law to intercept wire or oral communications where such person is a party to the conversation or where one party gives his consent to the interception. 18 U.S.C. § 2511(2)(c). This exception to the general statutory scheme is applicable in this action. For all of the relevant conversations at least one party to the conversation consented to the recording and thus their recording was not unlawful.

■ Defendants also contend that the "seizure" of their conversations constitutes a violation of the Fourth Amendment. The Fourth Amendment is applicable when a defendant justifiably relies upon an expectation of privacy. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The defendants in this action, however, spoke freely and certainly could not reasonably expect that the persons to whom they were speaking would not hear or record those statements.

The Supreme Court has approved the use of a concealed tape recorder by a participant of the conversation to record the conversation. Where an IRS agent, who had been offered a bribe wore a concealed tape recorder during a conversation with the defendant, the Court held the tapes were admissible to confirm the agent's testimony about the conversation. Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). See also On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952).

In Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), the defendant confided to a colleague

certain incriminating statements, not knowing that the colleague was a government informer. The Court rejected defendant's argument that the informer's failure to disclose his role as a government informer vitiated the defendant's consent to have the informer present. In affirming the conviction utilizing the informer's testimony, the Court noted that the Court had never intimated that the Fourth Amendment "protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." (385 U.S. 302, 87 S.Ct. 413.)

The Supreme Court has also approved the use of recorded conversations in a situation substantially similar to the one at bar. United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). In that case, during conversations with the defendant, an informer wore a transmitter which permitted the recording of certain incriminating statements. The Court approved the use of the testimony of the agents who conducted the warrantless electronic surveillance.

■ Accordingly, the use of the recordings or tapes would not violate defendant's Fourth Amendment rights.

■ The Court will next examine defendants' Fifth Amendment claims. The Fifth Amendment provides in part, "No person . . . shall be compelled . . . to be a witness against himself." The Supreme Court has consistently held that a necessary element of compulsory self-incrimination is some kind of compulsion. *Hoffa, supra.* The conversations of the defendants with Schwartz, Kammermeyer and Jones were entirely voluntary on the part of the defendants. Thus, no right protected by the Fifth Amendment's privilege against compulsory self-incrimination was infringed in this case, because there was no compulsion.

■■ Defendant Hodges also claims that the Government violated Illinois Revised Statutes, Ch. 38, §§ 14–1 through 14–7. Assuming *arguendo* that there was a violation of state law, this viola-

tion would not compel a suppression of the conversations. The admission of evidence obtained in violation of state law is not ordinarily precluded in a federal criminal prosecution, unless the violation of state law, in addition, constituted a violation of federal law or the Constitution. United States v. Scolnick, 392 F.2d 320 (3rd Cir. 1968), cert. denied, sub nom. Brooks v. United States, 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389; United States v. Addonzio, 313 F.Supp. 486 (D.N.J.1970), affirmed 451 F.2d 49, cert. denied 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812, rehearing denied 405 U.S. 1048, 92 S.Ct. 1309, 31 L.Ed.2d 591. See also United States v. Keen, 508 F.2d 986 (9th Cir. 1974), and United States v. American Radiator and Standard Sanitary Corp., 278 F.Supp. 241 (W.D.Pa.1967); United States v. Alexander, 218 F.Supp. 916 (W.D.Pa.1963). Thus, the alleged violation of state law would not require suppression of the conversations.

The Court will next examine the defendants' Sixth Amendment claims. Defendants contend that any recordings of conversations after the date of the first indictment must be suppressed because they were recorded by people working for or in conjunction with the federal government, at a time when the defendants did not have counsel present.

■ As previously noted, the first indictment and the second indictment charge substantially the same offense. The second indictment does not contain the allegations of a violation of 18 U.S. C. § 241, but both indictments charge that Merritts did cause and Hodges did aid and abet Merritts in causing the use of an interstate facility with intent to commit a crime of violence, that is to cause the death of Clyde Jordan to further an unlawful activity being the receiving of bribes from contractors and vendors doing business with School Board District 189 without the interference of Jordan and thereafter Merritts and Hodges attempted to perform the illegal activity of bribery. The return of the indictment marks the commencement of

the criminal prosecution to which the explicit guarantees of the Sixth Amendment are applicable. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Because of the similarity of the indictments, the Court will treat them as one, and accordingly, the right to counsel begins on September 25, 1974, the date of the return of the first indictment.

The Supreme Court has held that the Government may not use as evidence the incriminating statements of a defendant deliberately elicited by federal agents after the date of the indictment where defendant did not have counsel present during those conversations. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). In that case, Massiah's co-defendant, Colson, had decided to co-operate with the Government after the date of the arraignment. The co-defendant permitted federal agents to install a radio transmitter under the front seat of his car. Through this device, the agent was able to hear a conversation between Massiah and Colson during which Massiah made several incriminating statements. It was these statements which the Supreme Court held inadmissible.

As in *Massiah,* federal agents in this action used a person who had the confidence of Merritts to confer with him and elicit certain statements from him. The Government concedes that if the statements of Merritts were only "incriminating statements", *Massiah* would be applicable and would require the suppression of the post-indictment conversations. The Government, however, seeks to distinquish the facts at bar from those of *Massiah,* by contending that the subject matter of the post-indictment conversations are concerned not with defendant's incriminating statements about a prior crime, but rather with the commission of a crime itself. The Government draws particular attention to the transcript of an October 10, 1974, conversation between defendant Merritts and Kammermeyer wherein allegedly the crime of bribery was committed.

■ Where a defendant has been indicted for one offense and subsequently commits a separate and distinct offense, a taped conversation of the commission of that second offense would be admissible at trial of the second offense, although the defendant did not have his attorney present at the time of the conversation. United States v. Osser, 483 F.2d 727 (3rd Cir. 1973), cert. denied 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 221; Vinyard v. United States, 335 F.2d 176 (8th Cir. 1964), cert. denied 379 U.S. 930, 85 S.Ct. 327, 13 L.Ed.2d 342. In *Vinyard* the defendant was indicted originally for refilling liquor bottles in violation of 26 U.S.C. § 5301(c). The defendant offered to pay agents $500. to return the seized evidence, drop any charge, and release her. The Court noted that by this conversation she was committing a different and separate offense—that of attempted bribery. (335 F.2d 184). Therefore, evidence of this conversation could be admitted into evidence, notwithstanding the fact that her retained attorney was not present. In *Osser,* a grand jury had indicted the defendant for his alleged involvement in fraudulent schemes involving rigging of contracts for election machines. The grand jury continued its investigations of the defendant. In a conversation with Leon Freedman who was to appear before the grand jury, the defendant pleaded with Freedman not to tell the Government of their previous commission-splitting practices. Unbeknownst to the defendant, Freedman had agreed to co-operate with the Government and the conversation was recorded. Later the grand jury returned a second indictment against the defendant charging him with nine counts of mail fraud, one count of conspiracy for his alleged involvement in rigging city contracts, and one count of endeavoring to obstruct justice based upon his entreaties to Freedman. In *Osser* both the District Court and the Court of Appeals rejected a claim based upon *Massiah* and approved the use of this tape because the two indictments were sufficiently separate and distinct. The District Court noted, "The two in-

**812**

dictments display no more than a thin veneer of similarity. They exhibit basic differences sufficient to establish separate and distinct offenses and indictments" (483 F.2d at 732). The Court of Appeals observed, "The two indictments were sufficiently separable and different; we do not consider the crimes alleged in each to be multiple charges in related criminal activity. No indication exists that in taping the Freedman-Osser conversation the Government anticipated or sought further information to be used in the trial of the election machine rigging indictment." (483 F.2d at 734). Both of these cases permitted the use of the conversations, where defendants did not have counsel, because those conversations were evidence of offenses separate and distinct from those in the original indictment.

■ It appears to the Court that the conversations at issue in this action do not contain evidence of offenses separate and distinct from those in the indictment. They represent evidence of a necessary element of the offense—the performance or attempted performance of unlawful activity after the attempt to commit the crime of violence. This evidence, although it may constitute an offense *per se,* is still an essential element of this offense and, therefore, does not constitute a separate and distinct offense. Thus, *Massiah* is applicable to the case at bar and evidence of conversations on or after September 25, 1974 must be suppressed.

The Court does not dispute the Government's contentions that it has the right or even the obligation to continue its criminal investigation after the return of the indictment. See *Massiah, supra* 377 U.S. at 207, 84 S.Ct. 1199. Nor does the Court quarrel with the proposition that a defendant is not entitled to the presence of counsel while he is committing a crime. See e. g. Garcia v. United States, 364 F.2d 306 (10th Cir. 1966); Grier v. United States, 345 F.2d 523 (9th Cir. 1965). Nevertheless, the Government must pro-

ceed in its investigation in the proper manner.

Accordingly, as it pertains to conversations prior to September 25, 1974, the Motion to Suppress must be and is hereby denied. As to conversations on or after September 25, 1974, the Motion to Suppress must be and is hereby granted. Therefore, the Government shall not introduce at trial any evidence of conversations occuring on or after September 25, 1974.

It is so ordered.