## UNITED STATES of America

### v.

### Sigmond MOSKOW.

### Cr. No. 77–288.

United States District Court,
E. D. Pennsylvania.

Oct. 25, 1977.

David R. Strawbridge, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

John Rogers Carroll, Philadelphia, Pa., for defendant.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

On October 25, 1977, Sigmond Moskow, the defendant, pled guilty to a seven count mail fraud indictment. The plea was entered conditioned on an affirmance by the court of appeals of my order denying the defendant's motion to suppress. This pro-

cedure has been endorsed by the Third Circuit as a " 'commendable [effort] to relieve the problem of congested criminal trial calendars in a manner that does not diminish the opportunity for the assertion of rights guaranteed by the Constitution' ". *United States v. Zudick*, 523 F.2d 848, 852 (3rd Cir. 1975) *quoting Lefkowitz v. Newsome*, 420 U.S. 283, 293, 95 S.Ct. 886, 43 L.Ed.2d 196 (1974). Accordingly, I allowed the defendant to enter his plea of guilty while expressly reserving his right to assert his challenges to the government's evidence on appeal.

The defendant is a real estate proprietor and developer. The indictment charges that he devised and carried out a scheme to defraud the Insurance Placement Facility, a Pennsylvania insurance company, of approximately $25,000 by causing certain properties to be destroyed by fire and then making fraudulent claims on the insurance policies.

The defendant filed a timely motion to suppress evidence, and I heard testimony on this motion on September 6 & 7, 1977. The defendant sought to suppress the testimony of Edward Wadley claiming that Wadley's arrest was the result of an unlawful search of a building located at 2546 S. Second Street and owned by the defendant's corporation. His motion also sought to suppress certain items of physical evidence taken from the building. Additionally, Moskow sought to have suppressed tape recordings of conversations between himself and Wadley. It was contended that the monitoring of these conversations was without the necessary authorization from the Attorney General or his delegate. It was also contended that Wadley's consent to the monitoring was not given voluntarily. Finally, Moskow sought suppression of evidence seized from his office pursuant to a search warrant. The defendant claimed that the probable cause in the warrant was based on evidence obtained by the allegedly unlawful

monitoring of his conversations. It was argued that the warrant was, therefore, invalid. I denied the defendant's motion in all respects.

At the hearing on the motion to suppress, the following facts were developed: Edward Wadley was arrested inside a vacant building at 2546 South Second Street on March 26, 1977. That building was owned by the South Philadelphia Development Corporation, a corporation controlled by the defendant.[1] At approximately 3:00 A.M. on that date, the Philadelphia Police were notified by a resident of the adjoining building, Robert Offord, that there were noises coming from the vacant building. Mr. Offord informed the responding officer, Joseph Parker, that he had noticed a strong odor of gasoline coming from the building and also that a padlock which he had previously seen on its front door was missing. Officer Parker accompanied Mr. Offord to the door of the premises and Mr. Offord pointed out where the padlock had been. Officer Parker pushed the door open a crack and was repulsed by the strong odor of gasoline fumes. He closed the door and called for a supervisor and a fire engine.

When the supervisor, Lt. Renzi of the Philadelphia Police Department, arrived, he and two other officers entered and inspected the premises. They found Edward Wadley crouched beneath the basement steps. They also observed three empty gasoline cans and puddles of gasoline throughout the building.

At approximately 3:25 A.M., an assistant fire marshal, Lt. Quinn of the Philadelphia Fire Department, arrived at the scene. He inspected the premises, and seized the three empty gasoline cans and a "bic" lighter found in the basement. He then ordered the building ventilated and washed down with "fog steam" to prevent ignition of the gasoline.

---

1. Although neither party has raised the issue, I have doubts concerning the standing of Mr. Moskow to object to a search of a vacant building owned by his corporation. *See United States v. Britt*, 508 F.2d 1052 (5th Cir.) *cert.*

*denied* 423 U.S. 825, 96 S.Ct. 40, 46 L.Ed.2d 42 (1975). Because I find that the defendant's position is, in any event, without merit, and the parties have not briefed it, I will not decide this issue.

Edward Wadley was arrested and taken to the Philadelphia South Detective Division. After being advised of his *Miranda* rights and having indicated that he wished to waive those rights, Wadley confessed that he had been in the building to set a fire at the direction of defendant Sigmond Moskow.

Subsequent to his arrest, Wadley was introduced to agents of the Alcohol, Tobacco and Firearms Division of the U.S. Department of Treasury by Philadelphia detectives. Wadley told the agents that he would consent to have conversations between himself and Moskow electronically monitored and recorded. On the basis of the taped conversations and Wadley's statements, a search warrant was issued by a United States Magistrate authorizing the search of Moskow's office. On June 10, 1977, Moskow was arrested and his office was searched pursuant to that warrant.

The defendant conceded that the police had probable cause to enter 2546 South Second Street on the night of Wadley's arrest, but argued that they should have obtained a warrant prior to entering. The Government contends that the warrantless entry was justified by exigent circumstances. I agree with the Government.

Initially, I note that it may be that entry of a building to prevent a fire should not even be characterized as a "search" triggering the proscriptions of the fourth amendment. *Steigler v. Anderson,* 496 F.2d 793, 795 (3rd Cir. 1974) *citing Wyman v. James,* 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971). In any event, however, the circumstances were such as to justify a warrantless search.

The law governing warrantless searches was succinctly articulated by the Third Circuit in *Steigler v. Anderson, supra,* as follows:

While searches and seizures must generally be undertaken by state officials only after obtaining a search warrant, the Supreme Court has recognized a number of situations in which a warrantless search may be lawful. In each of these situations the Supreme Court found exigent circumstances rendering imperative official action without first obtaining a warrant.

496 F.2d at 795 (footnotes omitted). In *Steigler* the court found it beyond question that firemen have a right to enter a house to suppress a fire without first obtaining a warrant. It follows from that premise that any evidence of arson may be seized by firemen lawfully under the plain view doctrine. *Coolidge v. New Hampshire,* 403 U.S. 443, 464–473, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

In the present case, the police had probable cause to believe there was an intruder in the building. The strong odor of gasoline provided the emergency which obviated the need to obtain a warrant. The police could reasonably infer that any delay would have caused a serious risk to property and life. They, therefore, acted reasonably in promptly investigating the situation.

The defendant further contends that even if the police were justified in their entry, the emergency had subsided before the fire marshal arrived on the scene. I cannot agree. The building was still soaked with gasoline, and the danger was still present. The fact that firemen had inspected the building and had begun to ventilate it, did not end the emergency. "The ordinary fireman is not an expert in the cause of fires. He cannot determine . . . whether the danger is past or merely hidden . . . ." *United States v. Green,* 474 F.2d 1385, 1388 (5th Cir. 1973). The emergency did not end until the fire marshal, an expert in the cause of fires, investigated and saw that the necessary precautions were taken. *Steigler v. Anderson, supra* at 797. Of course, any items seized during this investigation could be properly admitted at trial under the plain view doctrine. *Coolidge v. New Hampshire, supra.* Moreover, even if the defendant is correct in his assertion that exigent circumstances no longer existed when the fire marshal made his investigation, the items he seized, with the exception of the lighter, had been previously discovered by the police. Therefore, the seizure of these items did not

encroach on the defendant's reasonable expectation of privacy or contravene any recognizable fourth amendment interest. *Steigler v. Anderson, supra* at 798; *United States v. Gargota,* 476 F.2d 1009, 1014 (6th Cir. 1973); *United States v. Green, supra* at 1390.

The defendant contends that evidence obtained from the electronic monitoring of Edward Wadley's conversations with Moskow should be suppressed because Wadley's consent was not voluntary and also because authorization required by a regulation of the Attorney General was not received before the monitoring occurred. I find, however, that the necessary authorization was secured and that Wadley's consent was voluntary. I am also of the opinion that even if the authorization was not secured in time, a violation of an administrative regulation does not warrant application of the exclusionary rule.

In *United States v. Osser,* 483 F.2d 727 (3rd Cir.) *cert. denied* 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 221 (1973), the Third Circuit held that the consent of a potential Government witness to the recording of a phone conversation between the witness and an indicted defendant was sufficiently voluntary even though it appeared that the consent may have been motivated by a desire to secure a grant of immunity. The court stated that its inquiry was "limited to whether the consent was voluntary and uncoerced, not whether the motivations for it were altruistic or self-seeking." 483 F.2d at 730. In *United States v. Bonanno,* 487 F.2d 654 (2d Cir. 1973), the court noted that the proof required to show that an individual consented to the monitoring of his conversations is quite different from that needed to show consent to a physical search. The court reasoned that a conversation monitoring, unlike a physical search, is not directed at securing evidence against the person whose consent is sought. Thus, there is little reason for a person to withhold consent. "Hence, it will normally suffice for the Government to show that the informer went ahead with [the monitoring] after knowing what the law enforcement officers were about." 487 F.2d at 658–59.

In the present case, Wadley testified to his consent. The idea of monitoring conversations was first voiced by Wadley's attorney during plea negotiations with the Philadelphia District Attorney's office. Wadley testified that he was not threatened, coerced or intimidated in any way. (N.T. 105). He testified that his motivation for giving his consent was "to cleanse any doubt of my truthfulness as far as what I was saying." (N.T. 94). Thus, by Wadley's own testimony I am convinced that his consent was voluntary.

As to the defendant's contention that the monitoring was in violation of Justice Department regulations, I believe that the uncontradicted testimony of Agent Perlick of the A.T.F. division of the Treasury Department to the contrary is dispositive of this issue. He testified that he acquired the necessary authorization on June 9, 1977 before any monitoring was conducted. (N.T. 15–16). I do not find this testimony inconsistent with the fact that the written authorization form was not stamped approved until June 11, 1977. This fact does not preclude the possibility that an oral authorization was given on June 9 and confirmed in writing on June 11. In view of Agent Perlick's sworn testimony and the fact that the defendant presented no evidence to the contrary, I conclude that the written authorization merely confirmed a previous oral authorization.

Because I find that the Government complied with the applicable regulation, I will only briefly express my opinion that the exclusionary rule should not be applied in any event. The primary purpose of the exclusionary rule "is to deter future unlawful police conduct." *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). In determining whether or not to apply the rule, the Supreme Court has engaged in "weighing the utility of the exclusionary rule against the costs of extending it" to any particular situation. *Stone v. Powell,* 428 U.S. 465, 489, 96 S.Ct. 3037, 3049, 49 L.Ed.2d 1067 (1977). In the present case, I find the cost, excluding high-

ly probative evidence, far outweighs any potential benefit. This regulation is not designed to protect any individual right, since the Constitution does not protect against Government monitoring of conversations where one of the parties has consented. *United States v. Santillo,* 507 F.2d 629 (3rd Cir. 1975). It follows that the regulation is designed for administrative control purposes, and the interest, if any, in deterring violations of internal control regulations is pale when compared to the strong judicial interest in ascertaining the truth. I, therefore, decline to extend the exclusionary rule to these circumstances.[2]

Because I have found that the evidence used to support the search warrants issued in this case was lawfully obtained, it necessarily follows that the warrants were properly issued. There is no dispute as to the existence of probable cause. Consequently, I reaffirm my denial of the defendant's motion to suppress.

---

2. *But see United States v. Caceres,* 545 F.2d 1182 (9th Cir. 1976), *petition for cert. filed,* No. 76–1309 (3/21/77).