**UNITED STATES of America**

v.

**MOSKOW, Sigmund, Appellant.**

**No. 78–1108.**

United States Court of Appeals, Third Circuit.

Argued Sept. 7, 1978.

Decided Nov. 30, 1978.

John Rogers Carroll, Thomas Colas Carroll, Carroll Creamer Carroll & Duffy, Philadelphia, Pa., for appellant.

Robert N. DeLuca, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief, Appellate Section, David R. Stawbridge, Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before ALDISERT and HIGGINBOTHAM, Circuit Judges, and STERN, District Judge.*

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The major question presented for review is the finality, and therefore the appealability, of a conditional plea of guilty entered by the appellant and accepted by the district court. The government argues, curiously, that because the court erred in accepting the guilty plea, "this case should be remanded to the District Court with instructions that the defendant be afforded an opportunity to move to withdraw his

* Honorable Herbert J. Stern, of the United States District Court for the District of New Jersey, sitting by designation.

1. The notice of appeal filed January 20, 1978, states:

guilty plea." Government Brief at 7. Alternatively, the government asks that we affirm the district court. We hold that because the sentence imposed on the conditional plea constituted a final order, we have jurisdiction. We further determine that the district court did not abuse its discretion in accepting the plea, and affirm on the merits.

## I.

Charged in a seven count indictment with mail fraud, 18 U.S.C. § 1341, arising out of claims submitted by him for fire insurance proceeds on property that he allegedly caused to be destroyed by fire, Sigmund Moskow sought by pre-trial motion to suppress certain government evidence. The district court denied the motion. Appellant then entered a plea of guilty to all counts of the indictment, admitting, for the purpose of the plea, his guilt of the offenses charged. But he conditioned the plea with a reservation of his right to appeal to this court, after sentence, the denial of the motion to suppress. Relying on the teachings of *United States v. Zudick*, 523 F.2d 848 (3d Cir. 1975), the district court accepted the guilty plea, over the objections of the government, and later sentenced the appellant. The appeal, we must emphasize, is taken from the final judgment of sentence.[1]

In *Lefkowitz v. Newsome*, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed. 196 (1975), the Supreme Court held that a plea of guilty did not foreclose federal habeas corpus review of specified constitutional issues where state procedures allowed a defendant to plead guilty without forfeiting his right to review those issues. Drawing upon *Lefkowitz*, *Zudick* held that it was permissible for a district court to allow a defendant to enter a plea of guilty although challenging the court's ruling that the prosecution was not barred by the statute of limitations. We noted that

Sigmund Moskow, defendant above, hereby appeals to the United States Court of Appeals for the Third Circuit from the judgment of sentence in the above captioned case, imposed January 12, 1978.

the plea was not to preclude his appealing the statute of limitations issue; if appellate courts ruled that issue could not be presented on appeal following a guilty plea, appellant would be permitted to withdraw the plea; if the limitations issue were decided ultimately in the government's favor, the sentence would stand, and if the government ultimately lost on that issue, the indictment would be dismissed. We endorse this procedure. 523 F.2d at 851.

Recognizing that our holding in *Zudick* would have precedential effect, we stated that "we endorse the use of the conditional guilty plea in appropriate circumstances." 523 F.2d at 852. Whether the facts of this case are "appropriate circumstances" is the question presented by the government. It urges us to distinguish between preserving those pre-trial decisions of law which absolutely preclude the possibility of a subsequent trial, as, for example, a *Zudick* statute of limitation question, and a pre-trial decision where reversal on appeal would permit the withdrawal of the guilty plea and a subsequent trial. It urges us to rule that "appropriate circumstances" are not present in the latter situations. The issue being squarely presented, we now address the facts.

## II.

Sigmund Moskow, a South Philadelphia real estate developer and landlord, was charged with seven counts of mail fraud. The indictment alleged that he had caused the destruction by fire of three of his properties and had fraudulently obtained insurance proceeds by misrepresenting his involvement in the fires to the insurance companies. The indictment also charged that he had devised the same scheme for a fourth property and had obtained insurance increases for the purpose of carrying out the scheme.

The fires in question were actually set by Edward Wadley, a co-conspirator and government witness. Wadley was arrested on March 26, 1977 while attempting to set a fire at 2546 South Second Street, Philadel-phia, a Moskow-owned property. The government's evidence showed that this arson was attempted at the direction of Moskow, as part of the continuing insurance fraud.

Wadley was discovered shortly after 3:00 A.M., when Philadelphia police responded to the complaint of Robert Offord, a resident of 2548 South Second Street, who had reported hearing noises inside the vacant building next door. On arrival, the officers were advised by Offord that a padlock, which he had seen earlier that day, had been removed from the front door. The officers also detected a strong odor of gasoline coming from the property. After calling for a supervisor, and waiting for his arrival, the police entered the premises where they discovered Wadley in the basement crouched behind the stairs. They also discovered three empty gasoline cans and a disposable lighter, which were seized by a fire marshal.

After his arrest, Wadley told the police that he was in the building to commit a burglary. Yet recognizing the implausibility of this story, he soon confessed his attempt to burn the building and his complicity with Moskow.

Wadley was released on bail. During the first week of June, 1977, he was contacted by Moskow and asked if he would burn 624 Mifflin Street. He told Moskow he would do so, but instead, immediately contacted Detective Wayne McGlotten of the Philadelphia Police Department. McGlotten introduced him to agents of the Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms. Wadley agreed to contact Moskow and to allow conversations between himself and Moskow to be electronically recorded by a hidden monitoring device. As a result, three telephone calls and one meeting were recorded by government agents.

On the basis of the recorded conversations and Wadley's statements, a warrant was issued authorizing the search of Moskow's office. On June 10, 1977, Moskow was arrested and his office searched pursu-

ant to that warrant. On June 20, government agents executed a second warrant which authorized them to inspect and photograph the property at 624 Mifflin Street. Additional evidence showed that Moskow had increased his insurance coverage on this property from $10,000 to $25,000 in May, 1977.

Moskow moved to suppress Wadley's testimony, claiming that Wadley's arrest was the result of an unlawful search. Moskow's motion to suppress also challenged the physical evidence taken from the building; the recorded conversations between himself and Wadley, on the grounds that the monitoring was not properly authorized by the Attorney General or his delegate and that Wadley's consent was involuntary; and evidence seized from Moskow's office, because the search warrant was procured on the basis of the prior illegal searches and recordings. After a hearing the district court denied the motion in all respects. As previously stated, Moskow then entered a guilty plea conditioned on his right to appeal the denial of his motion to suppress. *United States v. Moskow,* 443 F.Supp. 571 (E.D.Pa. 1977).

### III.

Whether there be a generous or a grudging application of the *Zudick* rule requires an examination of its stated *ratio decidendi.* There, our beginning point was a statement of faithful adherence to the general rule that a voluntary and intelligent guilty plea bars subsequent constitutional challenge to the proceedings. *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). We then drew upon *Lefkowitz v. Newsome, supra,* for authority that a defendant's federal constitutional

rights could be vindicated when he had attached the preservation of these rights as a condition to the entry of his guilty plea in a state court. As Moskow has done, Newsome had entered a plea of guilty subject to the right to appeal "the denial of his motion to suppress the drugs and related paraphernalia seized at the time of his arrest." *Id.,* 420 U.S. at 285, 95 S.Ct. at 887.[2] The court contrasted this type of plea with "the pleas entered by the defendants in the *Brady* trilogy of cases and *Tollett v. Henderson,*" and observed that "Newsome's plea had legal consequences quite different from the consequences of the pleas entered in traditional guilty-plea cases.[3] Far from precluding review of independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of his 'guilty plea,' Newsome's plea carried with it the guarantee that judicial review of his constitutional claims would continue to be available to him. In this respect there is no meaningful difference between Newsome's conviction and a New York conviction entered after a trial." 420 U.S. at 290, 95 S.Ct. at 890, paraphrased in *Zudick, supra,* 523 F.2d at 852.

Although not presented in the context of a state case subject to federal collateral review as in *Newsome,* a similar issue was presented to us in *United States v. D'Amato,* 436 F.2d 52 (1970), wherein the defendant entered a guilty plea, reserving the right to challenge 18 U.S.C. § 1952 on the ground that the statute forming the basis of his indictment violated his right to due process as guaranteed by the Fifth Amendment. Without setting forth a statement of reasons, our court, in the *Newsome* formulation, obviously perceived "no meaningful difference between [D'Amato's] conviction and a [federal] conviction entered after a trial." 420 U.S. at 290, 95 S.Ct. at 890. In so doing, we were following the example of *Haynes v. United States,* 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).

---

**2.** Newsome also argued that the arresting officer did not have probable cause to make a "loitering" arrest.

**3.** In *United States v. Benson,* 579 F.2d 508 (9th Cir. 1978), the Ninth Circuit failed to recognize this distinction between a conditioned plea and the traditional guilty pleas of *Tollett* and the *Brady* trilogy.

Newsome and *D'Amato* constituted the precedential backdrop to our decision in *Zudick*, an appeal that presented a reserved point of statutory construction, rather than a question of constitutional law. Recognizing that distinction, we said:

> The rule of *Newsome* obviously does not obtain here; however, the Court's policy rationale provides guidance on the propriety of conditional guilty pleas.
>
> Such pleas fall within an exception to the Court's general rule that a voluntary and intelligent guilty plea bars subsequent constitutional challenge to the proceedings. The reasons for the exception are twofold: (1) in the case of a conditional guilty plea, the prosecution "acquires [no] legitimate expectation of finality in the conviction," *Lefkowitz v. Newsome, supra*, 420 U.S. at 289, 95 S.Ct. at 889; (2) the conditional plea procedure represents a "commendable [effort] to relieve the problem of congested criminal trial calendars in a manner that does not diminish the opportunity for the assertion of rights guaranteed by the Constitution." *Ibid.* at 293, 95 S.Ct. at 891. *See also United States v. Doyle*, 348 F.2d 715, 719 (2d Cir.) (Friendly, J., suggesting the use of conditional guilty pleas), *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965). Although the *Newsome* case dealt with the conditional plea in the context of a constitutional claim, we perceive no meaningful distinction between the policy in constitutional cases, *e. g., D'Amato, supra*, and the policy in cases, like this one, implicating the construction of statutes.

523 F.2d at 852 (footnote omitted).

It bears emphasis that in *Zudick*, we did not base our decision on a right of Zudick, constitutional or otherwise, to have the court accept his plea; at bottom, the decision was an approval of the district court's exercise of its broad discretion to accept a plea under Rule 11, Fed.R.Crim.P. We stated specifically:

> We have not hesitated in the past to express, in the exercise of our supervisory powers, what would best further the administration of criminal justice within this Judicial Circuit. *In re Grand Jury Proceedings (Schofield)*, 507 F.2d 963, 971 (3d Cir. 1975) (dissenting opinion) (collecting cases). Having found neither jurisprudential nor prudential impediment to doing so, we endorse the use of the conditional guilty plea in appropriate circumstances; and we have no problem concluding that appellant properly preserved the statute of limitations issue for review.

523 F.2d at 852. *Cf. United States v. Palmer*, 574 F.2d 164, 166 (3d Cir. 1978).

In approving the conditional plea procedures utilized by D'Amato and Zudick, this court recognized the problems of congested criminal trial calendars; we noted that the Supreme Court described the New York procedure to relieve the problem with a conditional plea as "commendable efforts;" and we shouldered our responsibility as an appellate court to cooperate with innovative district judges who daily are faced with the problems of crushing case loads and lengthy trials.

The imaginative district judges in this circuit who designed and executed these procedures recognized that any trial consists of two, and only two, basic ingredients—questions of fact and questions of law. The only purpose of a jury or bench trial is to have a fact-finder reduce controverted items of evidence into findings of fact. The obvious scarcely need be stated: if there are no questions of fact, there need be no trial. If the sole issue is the legal consequences of admitted facts, the energies of the federal judicial system should concentrate upon resolving the questions of law. If the problem for appellate resolution is one of law, it can be preserved without building an artificial edifice to house it. "The Court has repeatedly emphasized that 'a guilty plea for federal purposes is a judicial *admission of guilt* conclusively establishing a defendant's factual guilt.' *Lefkowitz v. Newsome*, 420 U.S. 283, 299, 95 S.Ct. 886, 894 (1975) (White, J., dissenting) (emphasis added)." *Henderson v. Morgan*, 426 U.S. 637, 648, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (White, J., concur-

ring). If factual guilt is admitted, as in a plea of guilty, or if the facts are stipulated, there is no persuasive reason to require a lengthy trial in order to preserve a legal point for appellate review.

Nor are we impressed by the government's suggestion that conditional pleas will generate a larger number of appeals in guilty plea cases. This observation overlooks the reality that a trial is an obvious alternative to a conditional guilty plea. At oral argument it was conceded that virtually every guilty verdict obtained at trial results in an appeal. That most of these appeals are without merit, relatively or absolutely, is evidenced by the low percentage of reversals in this court and nationally. In the year ending June 30, 1977, the percentage of criminal convictions reversed by this court was 5.3%; for all circuits it was 10.3%.[4] The distinction we perceive between an appeal from a conditional plea and an appeal from a full trial is that in an appeal from a conditional plea the issues are presented more narrowly; we will not be exposed to the threadbare trial error allegations that compose the bulk of unsuccessful issues raised in criminal appeals.

We are also conscious of undue delays in the administration of justice produced by unnecessary trials, and also of the crushing financial burdens placed on the taxpayers who ultimately pay the expenses of federal criminal litigation. A public expense of hundreds of thousands of dollars, inevitable in some criminal trials, is the price one gladly pays under a Constitution where "man can be free because the state is not";[5] to commit these monies needlessly is, in D. Sassoon's words, "visionless officialized fatuity."

## IV.

The government's position, as we understand it, is a challenge to our power to review a conditional plea accepted under the circumstances presented here, and alternatively, a contention that if we do possess the power, we should not permit the practice. Although distinct, the issues are interrelated.

### A.

▮ The government makes a candid acceptance of the conceptual basis of both *D'Amato* and *Zudick*, explaining that in both cases a resolution of the legal issues in favor of the defendants would have ended the proceedings; in one case, there could have been no further prosecution under an unconstitutional statute; in the other, the proceedings would have been outlawed by the statute of limitations. But here, we could resolve any one of several suppression issues in favor of the appellant, thus giving him the opportunity to withdraw his plea and to compel a trial. In effect, argues the government, this conditional plea permits the defendant to appeal an adverse pre-trial suppression order, a privilege denied defendants and extended only to the government in 18 U.S.C. § 3731.[6]

The government's contention fails to recognize that this appeal is neither from the

---

4. Annual Report of the Director of the Administrative Office, U.S. Courts, 1977, Table B.1.

By contrast, appeals following guilty pleas have produced a much higher rate of reversals. During the 1960's, both New York and California created by statute the right to appeal a conviction entered on a guilty plea. In the first nine years of the New York experience, 8 of 20 cases were reversed, and in the first six years in California, 3 of 13 were reversed, a surprising overall rate of 33%. Comment, *Appellate Review of Constitutional Infirmities Notwithstanding a Plea of Guilty*, 9 Hous.L.Rev. 305, 315–19 (1971).

5. E. Rostow, *The Democratic Character of Judicial Review*, 66 Harv.L.Rev. 193, 195 (1952).

6. 18 U.S.C. § 3731 provides in pertinent part:

§ 3731. Appeal by United States

．　．　．　．　．

An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts [*sic*] suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

order denying suppression nor from the order accepting the conditional plea; the appeal is from the judgment of sentence. A judgment of sentence is a final order whether the sentence is imposed after a jury verdict or after the entry of a guilty plea. Unlike an appeal from an interlocutory order, there is a devastating finality to these proceedings. Appellant has pleaded guilty, and if he does not prevail here—as he will not—there is the same finality that exists in an appeal after sentence of conviction rendered upon a jury verdict. This court not only has the *power* to review an appeal after sentence of conviction, we have the *duty* to review it as a final order, 28 U.S.C. § 1291.

> Present federal law has made an appeal from a District Court's judgment of conviction in a criminal case what is, in effect, a matter of right. That is, a defendant has a right to have his conviction reviewed by a Court of Appeals, and need not petition that court for an exercise of its discretion to allow him to bring the case before the court. The only requirements a defendant must meet for perfecting his appeal are those expressed as time limitations within which various procedural steps must be completed.

*Coppedge v. United States*, 369 U.S. 438, 441–42, 82 S.Ct. 917, 919, 8 L.Ed.2d 21 (1962) (footnote omitted). *See also Corey v. United States*, 375 U.S. 169, 84 S.Ct. 298, 11 L.Ed.2d 299 (1963); *Pollard v. United States*, 352 U.S. 354, 359, 77 S.Ct. 481, L.Ed.2d 393 (1957); *Berman v. New York*, 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204 (1937).

■ Admittedly, the range of questions open for consideration on the merits in a direct appeal from a sentence entered on a guilty plea is somewhat restricted; *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); but the power to hear these appeals and the extent of relief which can be granted are two very different things. We have the power to hear the merits of

this appeal from a final order of sentence; we do not distinguish our power to review issues preserved at trial from our power to review issues preserved at the reception of a guilty plea.

### B.

The government's related argument is that the district court misused its discretion in accepting this conditional plea, that the "appropriate circumstances" rule of *Zudick* should not be applied where there is the possibility of future trial proceedings if the appellant were to prevail on the merits in his appeal. Subsumed in this contention seems to be the skein of an argument that acceptance of the conditions here offends the provisions of Rule 11, Fed.R.Crim.P.

### 1.

■ In finding no Rule 11 infirmity, as obviously we did not in *D'Amato* and *Zudick*, we confess difficulty in conceiving how the government can mount a Rule 11 deficiency argument in *its* favor. So long as the district court respects safeguards enacted for the protection of the defendant in the rule, especially the provision that "the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement," we do not understand how Rule 11 is offended by these conditions. Rule 11 allows the broadest of conditional pleas. At one extreme, *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), held that a guilty plea accompanied by protestations of innocence is constitutionally acceptable: "Ordinarily, a judgment of conviction resting on a plea of guilty is justified by the defendant's admission that he committed the crime charged against him and his consent that judgment be entered without a trial of any kind. The plea usually subsumes both elements, and justifiably so, even though there is no separate, express admission by the defendant that he committed the particular acts claimed to constitute the crime charged in the indictment," 400 U.S. at 32, 91 S.Ct. at 164, subject to the requirement that the

**890**

court "shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea," 400 U.S. at 38 n.10, 91 S.Ct. at 168 n.10. This gives the defendant the broadest of alternatives. At the other extreme, the government can enter into a myriad of conditions with a defendant under plea agreement procedures. *See* Rule 11(d), (e). From a jurisprudential standpoint, the limited conditions which led to the entry of the plea in this case pale into insignificance when compared, quantitatively or qualitatively, with plea agreements—conditional pleas of guilty in the pristine sense—made every day in the federal courts.

**2.**

But the government argues further that it may be prejudiced by the delay of a possible trial should appellant prevail on the merits. It raises the usual difficulties associated with trial delay, such as memories dimming and disappearance of witnesses. If this be considered a truly serious and valid argument, one that could be successful for the *government* in this case, then a like argument should be available to a *defendant* when the government appeals pre-trial suppression under § 3731. So to state this argument is to answer it.

**3.**

■ As we reject these contentions, it is well to put the rule of "appropriate circumstances" in proper perspective. It is based on our confidence in the proper exercise of discretion by the district judges in this circuit. We believe the district judges have as much at stake in this procedure as we do. They are as opposed to piecemeal appeals and truncated proceedings as we are. They value finality as highly as we do. We pre-

sume, therefore, that the conditional plea procedure will not be abused. If it is, we will correct it on a case-by-case basis. We trust that the district courts will be receptive to a showing by the government in a given case that there is a probability of actual, ultimate prejudice. We are also cognizant that some of our sister circuits have adopted a more restrictive policy than the one we have approved in *D'Amato, Zudick,* and *Palmer.*[7]

**V.**

We now turn to the merits of appellant's suppression motion. Moskow argues that the electronic surveillance violated Department of Justice guidelines, that the government's informant did not consent voluntarily to monitoring the conversations, and that the court erred in denying the motion to suppress the product of three searches conducted by the law enforcement agents.

**A.**

■ As a matter of internal administrative control, the Department of Justice has required authorization to be obtained from the Attorney General, or a designated assistant, before electronic devices may be employed to monitor private conversations, even when one of the parties consents. This procedure is outlined in the departmental orders. Written approval is required unless exigent circumstances dictate the need for prompt action. Oral approval in exigent circumstances is permissible if followed promptly by written authorization.

Appellant argues that the guidelines were violated because a written approval did not precede the electronic monitoring. But the government answers that the "exigent circumstances" procedure was followed in this case. Agent Harold Perlick,

---

7. *See, e. g., United States v. Cox,* 464 F.2d 937, 941–42 (6th Cir. 1972) ("This is not to say that there is not substantial support for extending the Haynes rule to most guilty plea situations. However, despite the existence of that respectable authority, we decline to adopt as a rule in the Sixth Circuit the procedure allowed by the district court in the instant case"); *United States v. Brown,* 499 F.2d 829, 832 (7th Cir. 1974) (accepting the rationale of *Cox* ); *United*

*States v. Sepe,* 486 F.2d 1044, 1045 (5th Cir. 1973) (a policy statement unaccompanied by any supporting reasons); and *United States v. Benson, supra* (9th Cir.). It bears emphasis that in *Benson, Cox,* and *Brown,* while disapproving the practice, the various courts met the merits of the appeals. The Fifth Circuit's statement in *Sepe* was also *obiter dictum,* the court meeting the merits of the particular appeal.

Bureau of Alcohol, Tobacco and Firearms, testified that emergency authorization was obtained before the monitoring was initiated. This oral authorization was followed up by a written request and approval as evidenced by the signature of Russell T. Baker, Jr., Deputy Assistant Attorney General. We are satisfied that there was sufficient evidence to demonstrate that an emergency situation was present.[8]

### B.

■ Appellant's next argument is that Wadley was coerced by the threat of extensive prosecutions if he did not assist the government by recording conversations with appellant. We conclude that appellant failed to show that Wadley's consent was not voluntary.

On his own initiative, Wadley contacted Philadelphia Police Department Detective McGlotten and, in a matter of days, arrangements were made for the electronic monitoring of telephone and person-to-person contacts with Moskow. The record shows that this monitoring was done with the free and voluntary consent of Wadley, supported by Wadley's desire to show that the story he told the investigators was true. Wadley testified at the suppression hearing that he wanted "to cleanse any doubt of my truthfulness as far as what I was saying." Transcript of Hearing at 94.

As in the situation confronting the witness Freedman in *United States v. Osser*, 483 F.2d 727 (3d Cir. 1973), *cert. denied*, 414

U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 221 (1973), there were no threats or coercion, nor did Wadley express the belief that he "had to cooperate" as did the witness in *United States v. Laughlin*, 222 F.Supp. 264, 266 (D.D.C.1963). Obviously, Wadley did expect continued favorable treatment as a result of his agreement to cooperate, but this consideration did not render his consent involuntary. As we observed in *Osser*:

> Our inquiry on appeal is limited to whether the consent was voluntary and uncoerced, not whether the motivations for it were altruistic or self-seeking.

483 F.2d at 730. *See also United States v. Zarkin*, 250 F.Supp. 728, 737 (D.D.C.1966).

### C.

■ The investigation which led to this prosecution began on March 26, 1977 when Edward Wadley was arrested inside Moskow's vacant building at 2546 South Second Street. At the time of the arrest, officers discovered and seized evidence against Moskow. Wadley's subsequent cooperation enabled the government to record additional incriminating evidence, all of which supported the government's application for search warrants which later produced still more evidence.

The appellant contends that: (1) the March 26, 1977, entry by Philadelphia police into 2546 South Second Street, although with probable cause, was unlawful because done without a warrant and that the observation of incriminating evidence, including

---

8. The government's brief is persuasive:

> The emergency situation was evidenced by the solicitation of Wadley by Moskow to set a fire in a vacant building in a residential area. The immediate neighborhood consisted of occupied new-type houses. Federal agents knew that Moskow had been involved in this activity for over one year and that he had been responsible for setting at least five fires (see Complaint and Warrant Affidavit, which is incorporated in the search warrant and is part of suppression record . . . .) Further, federal agents knew from Wadley that Moskow had solicited him approximately one week before the June 9 telephone calls. Wadley testified that Moskow "had wanted me to do the job, like that weekend, the weekend before, but, you know, I was delaying it." . . . Moskow's past con-

duct and present intentions demonstrated that he was a serious public menace. At the same time, he was a successful, well-regarded businessman, who would likely prevail in a one-on-one credibility contest with an admitted arsonist. Accordingly, when the opportunity arose for confirming Moskow's solicitation on tape, it was imperative that the agents act promptly. Wadley's cooperation with the agents had been assured, but the agents could not run the risk that Moskow would find another unknown arsonist to further his illegal designs while the agents were taking the time required to obtain written authorization. Therefore, consistent with departmental regulations, emergency authorization was sought and obtained.

Brief for Appellee at 11–12.

the arrest of Wadley, was unlawful and the fruits thereof should have been suppressed; (2) the warrantless entry by a fire marshal later in the morning of March 26 was likewise unlawful because made without a search warrant and the products of his investigation should have been suppressed; (3) the federal search warrants executed on June 10 and June 20, 1977, although facially containing sufficient showing to make out probable cause, were defective because the facts stated therein were the product of prior illegal searches as well as unlawful electronic surveillance. The government contends that the entry by the police and fire officials into 2546 South Second Street without a warrant was justified under the "exigent circumstances" exception to the warrant rule.

It is well settled that absent a warrant, the requirements of the Fourth Amendment can be satisfied by the existence of probable cause and such other circumstances which would cause a reasonable person to believe that the "exigencies of the situation made that course imperative." *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948); *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1966). We agree with the government that to allow this situation to go uninvestigated for the several hours it would have taken to obtain a warrant would have allowed a grave public danger to go uncorrected, and reject Moskow's suggestion that the danger had passed when the police arrived and that they had a present ability to "freeze" the situation by securing the premises from the outside. Indeed, it can be said that it was the duty both of the police and the fire marshal to act promptly to investigate and eliminate the public hazard. *See* Philadelphia Home Rule Charter, § 5–200 et seq. (1951), and 53 P.S. §§ 14525, 14526 and 14529.

The police were responding to specific information of a surreptitious entry into a vacant building at a late hour of the night. Upon their inquiry, they detected a strong odor of gasoline coming from the building. They had no way of knowing whether the intruder might already have started a fire that prompt action could extinguish with minimal damage, or whether the intruder might have departed and left behind a fuse or delay mechanism that might be deactivated, if discovered quickly. If the intruder were still in the building and aware of the police presence, he might have considered lighting a diversionary fire to aid his escape. Indeed, the police could not realistically preclude the possibility of *any* reckless behavior by an intruder who possessed the quantity of gasoline evident from the fumes. Of primary concern to the police was the safety of the occupants of neighboring buildings. To eliminate the hazard to them, immediate entry was required.

The cases relied on by appellant do not address the kind of exigent circumstances which justified the warrantless entry in this case. In *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the appellants complained of a search of a footlocker which had been transported with them on a train and loaded into an automobile upon their arrival at a Boston train station. It was conceded that federal agents had probable cause to believe that the footlocker contained marijuana. They arrested appellants and transported them and the footlocker to their office. About an hour and one-half later, the footlocker was opened without a warrant, and was found to contain a large quantity of the noisome weed. There, the government did not argue the exigency that is the touchstone of this case. Indeed, it was specifically stated that "the agents had no reason to believe that the footlocker contained explosives or other inherently dangerous items." 433 U.S. at 4, 97 S.Ct. at 2480.

*Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), draws an important distinction between extinguishing a fire and lingering for a reasonable time to investigate the cause, on the one hand, and making additional entries later to investigate the causes, on the other. A warrant is required under the latter circumstances. The Court observed:

A burning building clearly presents an exigency of sufficient proportions to render a warrantless entry "reasonable." Indeed, it would defy reason to suppose that firemen must secure a warrant or

consent before entering a burning structure to put out the blaze. 436 U.S. at 509, 98 S.Ct. at 1950. It would also defy reason for a fire marshal to secure a warrant before entering a structure to prevent a fire by ordering the building ventilated and by seizing three empty gasoline cans and a "bic" lighter.

There being no illegal search by the police or fire marshal, the subsequent federal search warrant was not tainted.

The judgment of the district court will be affirmed.

STERN, District Judge * (dissenting).

I disagree with the majority that there is no principled difference between the conditional guilty pleas utilized in *United States v. Zudick*, 523 F.2d 848 (3rd Cir. 1975) and *United States v. D'Amato*, 436 F.2d 52 (3rd Cir. 1970) and that utilized below. I further find that the procedure authorized by the majority here is contrary to a recent decision of the Supreme Court. I, therefore, respectfully dissent from the majority's holding that the order appealed from is final within the meaning of 28 U.S.C. § 1291.

The pleas in *Zudick* and in *D'Amato*, although conditional were nevertheless final in that no matter what the disposition on appeal, there could be no trial. In *Zudick*, the defendant conditioned his plea upon the right to appeal the statute of limitations question; in *D'Amato*, the plea was conditioned upon defendant's right to test the constitutionality of the statute on appeal. In both cases, the government consented to the procedure and agreed that irrespective of whether this Court affirmed or reversed, there could be no further proceedings in the district court. Either the district court's disposition of the pre-trial motion was affirmed, in which case the defendant was bound by his plea of guilty, or the district

court's ruling was reversed, in which case there could be no trial. Both appeals, then, were from orders that were final as to the parties.

By contrast, the defendant here challenges six different pre-trial rulings, all of them relating to the admissibility of certain evidence. If we disagree with any *one* of the district court's six rulings, then the defendant may, at his option, withdraw his plea and proceed to trial. Thus, by using the conditional guilty plea under these circumstances, a defendant is permitted to test the sufficiency and the admissibility of the government's evidence prior to trial. If this Court agrees with the district court that the evidence is admissible, the defendant has lost nothing; in fact, he has received all the benefits of a guilty plea. If this Court disagrees with some or all of the evidentiary issues, then the defendant may proceed to trial, unscathed by his previous admission of guilt. Even if we disagree with *all* of the pretrial orders and suppress *all* of the challenged evidence, the government has reserved its right to press the prosecution with whatever other evidence it has. This, then, is a bare interlocutory appeal testing the admissibility of various items of evidence in the government's hands, and nothing more. If the government is permitted to use all of its evidence, then the defendant is willing to plead. If the government is to be denied any piece of it, then the defendant's plea is void.[1]

Apart from the jurisdictional question of finality, the use of the conditional guilty plea here flies in the face of the Supreme Court's policy judgment that the exclusionary rule operates not to free the guilty but to remedy violation of a defendant's fourth amendment rights. We defeat this policy when we permit a defendant who *admits* his guilt to test the government's ability to *prove* his guilt. We should not forget that

---

* Herbert J. Stern, United States District Judge for the District of New Jersey sitting by designation.

1. In the case of a bank robbery, for example, evidence may have been seized from the defendant's home, photographs taken, a confession obtained and the defendant identified in a lineup; each resulting item of evidence may be

challenged by the defendant prior to trial. If all of the defendant's pre-trial suppression motions are denied, the defendant may take a *Zudick* plea—which undoubtedly, will come to be known as a *Moskow* plea—conditioned upon the affirmance of each of the pre-trial rulings.

it is the purpose of the guilty plea—indeed, the purpose of a trial which the plea of guilt supplants—to determine the guilt or innocence of an accused. I cannot endorse the use of a conditional guilty plea to test the government's ability to prove that which has already been admitted.

The majority apparently finds insubstantial the government's argument that it is prejudiced by the delay of an interlocutory appeal. Yet, a unanimous Supreme Court has very recently relied on this exact consideration in holding there is no right to an interlocutory appeal from a pre-trial order denying a motion to dismiss an indictment on speedy trial grounds. *United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L. Ed.2d 18 (1978). There, the Court noted that an interlocutory appeal from a pre-trial refusal to suppress evidence would also be improper:

> Admittedly, there is value—to all but the most unusual litigant—in triumphing before trial, rather than after it, regardless of the substance of the winning claim. But this truism is not to be confused with the quite distinct proposition that certain claims (because of the substance of the rights entailed, rather than the advantage to a litigant in winning his claim sooner) should be resolved before trial. . . .

> . . . Dismissal of the indictment is the proper sanction when a defendant has been granted immunity from prosecution, when his indictment is defective, or, usually, when the *only* evidence against him was seized in violation of the Fourth Amendment. *Obviously, however, this has not led the Court to conclude that such defendants can pursue interlocutory appeals.* *Abney v. United States,* 431 U.S. (651), at 663 [97 S.Ct. 2034, 52 L.Ed.2d 651]; *Cogen v. United States,* 278 U.S. 221, 227, 49 S.Ct. 118, 73 L.Ed. 275 (1929); *Heike v. United States,* 217 U.S. 423, 430, 30 S.Ct. 539, 54 L.Ed. 821 (1910).

At 860, n.7. 98 S.Ct. at 1552 (Emphasis supplied).

In explaining the values which led it to find prejudice in permitting interlocutory appeals, the Supreme Court stated:

> Many defendants, of course, would be willing to tolerate the delay in a trial that is attendant upon a pretrial appeal in the hope of winning that appeal. . . .
> Among other things, delay may prejudice the prosecution's ability to prove its case, increase the cost to society of maintaining those defendants subject to pre-trial detention, and prolong the period during which defendants released on bail may commit other crimes.

At 862, 98 S.Ct. at 1553.

However, these considerations are the precise ones rejected by the majority in authorizing that which the Supreme Court has prohibited:

> But the government argues further that it may be prejudiced by the delay of a possible trial should appellant prevail on the merits. It raises the usual difficulties associated with trial delay, such as memories dimming and disappearance of witnesses. If this be considered a truly serious and valid argument, one that could be successful for the *government* in this case, then a like argument should be available to a *defendant* when the government appeals pre-trial suppression under § 3731. So to state this argument is to answer it.

Majority Op., *ante* at 890.

While it may be true, as the majority points out, that a like argument should be available to a defendant when the government exercises its right to appeal an adverse pre-trial suppression order, I do not agree with the majority that "[s]o to state this argument is to answer it." *Ante* at 890. The simple fact is that Congress has authorized such an appeal.

In sum, then, I find significant jurisprudential and policy impediments to the conditional guilty plea as utilized here, and I align myself with the vast majority of circuits which have refused to entertain such appeals. *See, United States v. Benson,* 579 F.2d 508 (9th Cir. 1978); *United States v. Brown,* 499 F.2d 829 (7th Cir.), *cert. denied,* 419 U.S. 1047, 95 S.Ct. 619, 42 L.Ed.2d 640 (1974); *United States v. Matthews,* 472

F.2d 1173 (4th Cir. 1973); *United States v. Sepe*, 486 F.2d 1044 (5th Cir. 1973); *United States v. Cox*, 464 F.2d 937 (6th Cir. 1972). While I agree that a trial may often be no more than a mere "charade" if done only to provide finality, the remedy for that is not the conditional guilty plea, but rather a trial on stipulated facts, which simultaneously dispenses with the need for a full-blown trial while preserving the right to obtain a reversal of the conviction if the Court of Appeals disagrees with the district court's disposition of the pre-trial motions and the error, if any, is not harmless.

In sum, while I applaud the plaudits the majority has bestowed upon the District Judges of this Circuit,[2] the usual soundness with which district judges exercise their discretion cannot itself, I respectfully suggest, confer jurisdiction upon this Court where none otherwise exists.

---

**2.** Particularly heartening were the accolades awarded by Judge Aldisert in *Zudick* to my own colleague, Judge Biunno of the District Court of New Jersey, who first created the *Zudick*-type plea.